```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
DEWITT MATHIS,

        Plaintiff,
                                                MEMORANDUM & ORDER
        -against-
                                                05-cv-4386 (KAM) (RLM)
UNITED HOMES, LLC, UNITED
PROPERTY GROUP, LLC, YARON
HERSHCO, GALIT NETWORK, LLC,
ALLIANCE MORTGAGE BANKING CORP.,
JOSEPH D. GAETA, MARIOS SFANTOS,
US BANK, N.A., AND XYZ
CORPORATION,

        Defendants.
-----------------------------------X

MILES MCDALE & LISA MCDALE,

        Plaintiff,

        -against-                              05-cv-5362 (RJD) (KAM)

UNITED HOMES, LLC, et al.,

        Defendants.
-----------------------------------X
CHARLENE WASHINGTON,

        Plaintiff,

        -against-                              05-cv-5679 (RJD) (KAM)

UNITED HOMES, LLC, et al.,

        Defendants.
-----------------------------------X
```

MATSUMOTO, United States District Judge:

      Pending before the court are defendants Michael

Masciale's ("Masciale") and Joseph D. Gaeta's ("Gaeta")

(collectively the "Appraisers") motions to dismiss all cross-claims asserted against them by their co-defendants, United Homes, LLC, United Property Group, LLC, Galit Network, LLC and Yaron Herscho (collectively, the "UH Defendants") and U.S. Bank in the *Mathis*, 05-cv-4386, *McDale*, 05-cv-5362, and *Washington*, 05-cv-5679, actions pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(c) and/or 56.[1]

For the reasons set forth herein, if the Appraisers enter into binding settlement agreements with the plaintiffs, which include releases of the plaintiffs' claims, and the other defendants also stipulate to dismiss their cross-claims against the Appraisers, the court will grant the Appraisers' motions and the cross-claims asserted by the UH Defendants and U.S. Bank against the Appraisers will be dismissed.

## BACKGROUND

The court assumes the parties' familiarity with the underlying facts and procedural history of the related cases. Moreover, a summary of the allegations in the complaints can be found at *Barkley v. Olympia Mortgage Co.*, No. 04 Civ. 875, 2007

---

[1]     Although the Appraisers seek dismissal of cross-claims asserted against them by all other defendants, all the other defendants have agreed to voluntarily dismiss their cross-claims against the settling Appraisers with prejudice.  Accordingly, the court considers the instant motions as seeking to dismiss only those cross-claims asserted by the UH Defendants and U.S. Bank against the Appraisers.

U.S. Dist. LEXIS 61940, at *8-30 (E.D.N.Y. Aug. 22, 2007) (Dearie, J.). Accordingly, the court provides only a brief recitation of the allegations pertinent to the instant motions.

Plaintiffs Dewitt Mathis, Miles McDale, Lisa McDale and Charlene Washington (collectively "plaintiffs") bring suit against the UH Defendants, the lender, Alliance Mortgage Banking Corp. ("Alliance"), and the Appraisers, amongst others, claiming that the defendants targeted first-time minority home-buyers and conspired to sell them over-valued, defective homes financed with predatory loans. (Compl. ¶ 2).[2] Plaintiffs allege that the defendants were engaged in a fraudulent property-flipping scheme wherein the UH Defendants were "the hub," buying damaged properties, performing cosmetic repairs, and then quickly re-selling the homes at often double the purchase price. (*Id.* at ¶¶ 31, 38-39).

According to plaintiffs, the UH Defendants worked with the Appraisers and Alliance, amongst others, who facilitated the sales by preparing significantly over-valued appraisals and correspondingly inflated loans and mortgages. (*Id.* at ¶¶ 32, 47, 51 & 73). Plaintiffs allege that Alliance further assisted the fraudulent scheme by manipulating the guidelines of the Fair

---

[2]     The three complaints have parallel numbering schemes for the common allegations. Accordingly, allegations appearing in all the complaints are cited as "Compl." and refer to the amended complaints of Mathis and the McDales, as well as the complaint of Washington.

Housing Act ("FHA") in order to provide plaintiffs with FHA-insured mortgages. With FHA insurance, Alliance or any subsequent holder of the mortgages can collect on the full over-inflated amounts of the loans in the event of default. (Compl. ¶¶ 2, 55; Mathis Compl. ¶ 118.)

Alliance sold the Mathis and Washington mortgages to U.S. Bank in the secondary market pursuant to an agreement dated February 24, 2000 ("Agreement") in which U.S. Bank agreed to purchase and/or service certain residential real estate mortgage loans from Alliance. (U.S. Bank's Answers to Plaintiffs Mathis's and Washington's Complaints, Affirmative Defenses and Cross-Claims ("U.S. Bank Answer"), dated September 21, 2007, Cross-Claims ¶ 2.)[3] Although plaintiffs make no direct allegations or assert any affirmative causes of action against U.S. Bank in their complaints, U.S. Bank currently services plaintiff Mathis's and plaintiff Washington's mortgages. Thus, as the "court cannot accord complete relief" in the absence of U.S. Bank and U.S. Bank has an interest in defending the enforceability of the Mathis and Washington mortgages, U.S. Bank was joined as a necessary party pursuant to Federal Rule of

---

[3]     U.S. Bank's answers to the Mathis amended complaint and the Washington complaint have parallel numbering schemes (and are virtually identical.) Accordingly, U.S. Bank's Answer to either complaint is cited as "U.S. Bank Answer" and refers to U.S. Bank's answers to the Mathis amended complaint and the Washington complaint.

Civil Procedure 19.[4]

Plaintiffs allege that as a result of defendants'
fraud, they are burdened by mortgages they cannot afford and are
at risk of losing their homes.  Plaintiffs assert claims against
the UH Defendants and Appraisers, amongst others, for violations
of federal anti-discrimination statutes, including the Fair

---

[4]     Federal Rule of Civil Procedure 19(a) states in
pertinent part:

> **(a)  Persons Required to Be Joined if
>       Feasible.**
> **(1) Required Party**.  A person who
>       is subject to service of
>       process and whose joinder will
>       not deprive the court of
>       subject-matter jurisdiction
>       must be joined as a party if:
>       **(A)** in that person's absence,
>           the court cannot accord
>           complete relief among
>           existing parties; or
>       **(B)** that person claims an
>           interest relating to the
>           subject of the action and
>           is so situated that
>           disposing of the action in
>           the person's absence may:
>           **(i)**  as a practical matter
>               impair or impede the
>               person's ability to
>               protect the interest;
>               or
>           **(ii)** leave an existing party
>               subject to a
>               substantial risk of
>               incurring double,
>               multiple, or otherwise
>               inconsistent obligations
>               because of the interest.

FED. R. CIV. P. 19(a).

Housing Act ("FHA"), 42 U.S.C. §§ 3604, 3605 and the Civil

Rights Acts, 42 U.S.C. §§ 1981, 1982 & 1985, New York's consumer

protection statute, *i.e.* New York General Business Law § 349,

state and local anti-discrimination statutes, including New York

State Executive Law § 296(5) and Title 8 of the New York City

Administrative Code, as well as asserting state-law claims of

fraud, conspiracy to commit fraud, and negligence.[5]

In answering plaintiffs' complaints, the UH Defendants

and U.S. Bank assert cross-claims against their co-defendants.

The dismissal of their cross-claims against Gaeta and Masciale

are the subject of the instant motions. The UH Defendants

assert the same cross-claim against remaining co-defendants

Alliance, Gaeta, Masciale, Michael Cheatham and Mario Sfantos in

the three related actions. (UH Defendants' Answer to

Plaintiffs' Amended Complaints and Cross-Claim ("UH Defendants

Answer"), dated October 22, 2007.)[6] Although denying liability

---

[5] The court notes that Judge Dearie dismissed all of
Mathis's claims against Gaeta as time-barred under the
applicable statute of limitations with the exception of Mathis's
fraud and Fair Housing Act claims. *Barkley,* 2007 U.S. Dist.
LEXIS 61940, at *69-71.

[6] The UH Defendants' answers to the Mathis and McDales
amended complaints and the Washington complaint have similar
structures, particularly with regard to the sections pertaining
the UH Defendants' cross-claim and affirmative defenses.
Accordingly, the UH Defendants' Answers to all three complaints
are cited collectively as "UH Defendants Answer" and refers to
the UH Defendant's answers to the Mathis and McDales amended
complaints and the Washington complaint.

to any of the plaintiffs or any other party for any amount, if the UH Defendants become obligated in any amount to any plaintiff or any other party, by judgment or otherwise, the UH Defendants seek contribution and/or indemnity for any judgment plus costs and expenses, including reasonable attorneys' fees incurred in the defense of plaintiffs' claims from the aforementioned co-defendants.  (*Id.*)

Similarly, in the Mathis and Washington actions, U.S. Bank asserts cross-claims against the following named parties: the UH Defendants, Alliance, Gaeta, Masciale, Michael Cheatham and Mario Sfantos.  U.S. Bank, however, seeks only indemnity (and not contribution) from its co-defendants.  Although denying its liability to any plaintiff or any other party for any amount, in the event that U.S. Bank becomes obligated in any amount to any plaintiff or any other party, by judgment or otherwise, U.S. Bank seeks indemnity for any such liability found against it, including reasonable attorneys' fees and expenses, incurred in the defense of plaintiffs' claims.  (U.S. Bank Answer, Cross Claims ¶ 2.)

U.S. Bank, however, also asserts two additional cross-claims solely against Alliance.  First, U.S. Bank seeks contractual indemnity from Alliance, alleging that

> The Agreement contains an indemnity
> provision which requires, in part, that:
> Alliance protect, indemnify and hold U.S.

> Bank harmless: (a) from all losses,
> liabilities, reasonable costs and expenses
> (including attorneys' fees) that are
> incurred by U.S. Bank with respect to or
> resulting from any breach of any
> representation, warranty or covenant of
> Alliance; (b) from any claim, loss or damage
> to U.S. Bank, including reasonable
> attorneys['] fees, resulting from any
> inaccuracy or incompleteness in the mortgage
> loan documents or any act or omission by
> alliance or its agents, including a failure
> to comply with applicable statutes or
> regulations; and; (c) from any such loss or
> damage, including reasonable attorneys[']
> fees, resulting from Alliance's actual wrong
> or error or omission in the preparation of
> the mortgage loan documents.

(U.S. Bank Answer, Cross Claims ¶ 3.) Thus, U.S. Bank claims that "if U.S. Bank is adjudged to be liable to plaintiff and/or others in this action . . . such will have been the result of the negligence, gross negligence, breach of contract, omission or other wrongful conduct of Alliance which is or will be liable to indemnify U.S. Bank for any and all alleged damages, along with the attorneys['] fees and expenses incurred herein." (*Id.*, Cross Claims ¶ 5.) Second, U.S. Bank seeks damages from Alliance for breach of contract. U.S. Bank alleges that, based on plaintiffs' allegations in the amended complaints, Alliance breached the Agreement, including several specific sections requiring the use of generally accepted accounting practices, prohibiting discriminatory conduct and fraudulent practices, and making warranties about the legality of the mortgage loan.

8

(*Id.*, Cross Claims ¶¶ 7-16.)  Thus, U.S. Bank asserts that it is entitled to damages, contractual relief, attorneys' fees and expenses from Alliance for the alleged breach.  (*Id.*, Cross Claims ¶ 17.)  Alliance denies these allegations by U.S. Bank, asserts affirmative defenses against the cross-claims, and cross-claims against all of its co-defendants for contribution and/or indemnification.  (Alliance's Answer to Cross-claims of U.S. Bank, dated November 12, 2007; Alliance's Answer to Plaintiff's Amended Complaint with Cross-Claim, dated September 20, 2007).

Over the course of several months, the court held several day-long settlement conferences with the participation of all counsel and all parties in the related actions.  (*See* Minute Entries, dated May 28 & 30, June 26 and July 3, 2008.)  Although the parties reached settlements in principle in the Mathis and Washington actions on July 3, 2008, the UH Defendants subsequently informed the court at a telephone conference on July 24, 2008 that "recent and significant changes" in the UH Defendants' financial viability made them unable to consummate either of the settlements reached in principle at the July 3, 2008 settlement conference.  (Minute Entries, dated July 3 & 24, 2008.)  Nevertheless, plaintiffs reached individual settlement agreements and settlements in principle with certain other defendants, including Gaeta and Masciale.  Gaeta and Masciale

have agreed to pay plaintiffs a specified settlement amount, however, they will only consummate the settlement if all of the cross-claims asserted against them by their co-defendants are either withdrawn or dismissed with prejudice. (*See* Minute Entry, dated December 5, 2008.) As noted above, all of the co-defendants have agreed to withdraw their cross-claims against Gaeta and Masciale with the exception of the UH Defendants and U.S. Bank. Plaintiffs have continued to engage in settlement negotiations with certain defendants through the present day.

Due to the unexpected halt in settlement negotiations resulting from the UH Defendants' claimed financial hardship, the court set an expedited discovery schedule. (Minute Entry, dated August 19, 2008.) After the court granted several requests for extensions of the discovery deadlines, fact discovery closed in the related actions on October 31, 2008 with the exception of discovery relating to handwriting exemplars from plaintiff Washington. (*See* Minute Entries, dated September 16, 29, October 17, November 24, December 2 & 18, 2008, February 19, 2009.)

## DISCUSSION

### I. Standard For Motion To Dismiss

Under Federal Rule of Civil Procedure 8(a), complaints (or in the instant case, the cross-claim allegations) must

include a "'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (*per curiam*) (quoting Fed. R. Civ. P. 8(a)(2)). As the pleadings are closed and as the court determines that the instant motions can be decided on the basis of the pleadings alone, the court shall consider the Appraisers' motions to dismiss as made pursuant to Fed. R. Civ. P. 12(c).

In deciding a Rule 12(c) motion, courts apply the same standard as that applicable to a motion to dismiss under Rule 12(b)(6). *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999). Accordingly, when considering a motion to dismiss under Rule 12(b)(6), a trial court must "accept as true all factual statements alleged in the [cross-claims] and draw all reasonable inferences in favor of the non-moving party," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (citation omitted), although mere "'conclusions of law or unwarranted deductions'" need not be accepted. *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994) (quoting 2A Moore, James William & Jo Desha Lucas, Moore's Federal Practice ¶ 12.08, at 2266-69 (2d ed. 1984)). Conclusory allegations "'will not suffice to prevent a motion to dismiss.'" *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (quoting *Gebhardt v. Allspect, Inc.*, 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000)). On a motion to dismiss, "[t]he issue is not

11

whether a [cross-claim] plaintiff will ultimately prevail but
whether the claimant is entitled to offer evidence to support
the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d
375, 378 (2d Cir. 1995) (quotations omitted).

Moreover, under Supreme Court precedent, a district
court must determine whether the "[f]actual allegations . . .
raise a right to relief above the speculative level, on the
assumption that all the allegations in the [cross-claims] are
true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 555 (2007) (citation omitted).  Thus, to survive a
Rule 12(b)(6) motion to dismiss, the allegations in the cross-
claims must meet the standard of "plausibility." *See id.* at 563
n.8, 564 (2007).  *Twombly* does not require that the complaint
(or here, the cross-claim) provide "detailed factual
allegations," *id.* at 555, however, it must "amplify a claim with
some factual allegations . . . to render the claim plausible."
*Iqbal v. Hasty*, 490 F.3d 143, 157-158 (2d Cir. 2007).

Although, in the Rule 12(b)(6) context, the court is
"normally required to look only to the allegations on the face
of the [cross-claim]," it may also "consider documents . . .
that are attached to the [cross-claim] or incorporated in it by
reference . . . ." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir.
2007).  "[E]ven if not attached or incorporated by reference, a
document 'upon which [the cross-claim] *solely* relies and which

is *integral to the [cross-claim]*' may be considered by the court in ruling on such a motion." *Id.* (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)) (emphasis in original).  "And whatever documents may properly be considered in connection with the Rule 12(b)(6) motion, the bottom line principle is that 'once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the [cross-claim].'"  *Id.* at 510 (quoting *Twombly*, 550 U.S. at 563).

Accordingly, in determining the adequacy of the UH Defendants' and U.S. Bank's cross-claims, the court shall consider the allegations set forth in the cross-claims and the plaintiffs' complaints, which are integral to the cross-claims, as well as the documents on which the cross-claims rely.  *See Roth*, 489 F.3d at 509; *see Fagan v. AmerisourceBergen Corp.*, 356 F. Supp. 2d 198, 220 n.7 (E.D.N.Y. 2004).  Although U.S. Bank, Masciale and Gaeta have all attached a variety of documents (in addition to attaching copies of the pleadings) to their motion papers, none of these documents were attached to or incorporated by reference by the pleadings regarding the cross-claims at issue, nor are they documents on which the cross-claims solely rely.  Thus, the court declines to consider these documents on a motion to dismiss pursuant to Rule 12(c).

## II. There Is No Federal Right To Contribution And/Or Indemnity Under The Fair Housing Act Or 42 U.S.C. §§ 1981, 1982 & 1985.

The threshold issue in the instant motion is whether a federal right to contribution and/or indemnity[7] is provided by the federal statutes under which the plaintiffs' claims are brought, *i.e.* the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, specifically, 3604[8] and 3605[9] and the Civil Rights Acts, 42

---

[7] Although many of the cases cited herein address only the right to contribution under the federal statutes at issue in the instant case and/or federal and state common law, "[t]he rationale for [these] holdings extends to claims for indemnification . . . . 'As with contribution, such claims could only arise by implication under the statutes or under common law principles, and the same argument would preclude recognition of indemnity under either theory.'" *Anderson v. Local Union No. 3*, 751 F.2d 546, 548 (2d Cir. 1984) (quoting *Anderson v. Local Union No. 3*, 582 F. Supp. 627, 633 (S.D.N.Y. 1984)); *Koch v. Mirza*, 869 F. Supp. 1031, 1042 (W.D.N.Y. 1993) ("Indemnity rights are unavailable under § 1983 for the same reasons that contribution rights are unavailable.")

[8] Title 42 U.S.C. § 3604 provides in relevant part: "[I]t shall be unlawful . . . . [t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."

[9] Title 42 U.S.C. § 3605 provides in relevant part:

(a) In general. It shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin.

U.S.C. §§ 1981, 1982 and 1985 (collectively, the "Civil Rights Acts").  A right to contribution and/or indemnity under a federal statute "may arise in either of two ways: first, through the affirmative creation of a right of action by Congress, either expressly or by clear implication; or, second, through the power of federal courts to fashion a federal common law of contribution [and/or indemnity]."  *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 638 (1981) (citing *Northwest Airlines, Inc. v. Transp. Workers*, 451 U.S. 77, 90-91 (1981)).

Where a federal statute does not expressly create a right of action for contribution and/or indemnity, "[t]he ultimate question . . . is whether Congress intended to create [the remedy of contribution or indemnity]."  *Northwest Airlines, Inc.,* 451 U.S. at 91.  "Factors relevant to this inquiry are the language of the statute itself, its legislative history, the underlying purpose and structure of the statutory scheme, and the likelihood that Congress intended to supersede or to

---

  (b) . . . .  As used in this section, the term "residential real estate-related transaction" means any of the following:
   (1) The making or purchasing of loans or providing other financial assistance--
    (A) for purchasing, constructing, improving, repairing, or maintaining a dwelling; or
    (B) secured by residential real estate.
   (2) The selling, brokering, or appraising of residential real property.

supplement existing state remedies." *Id.* (citing *Cort v. Ash*, 422 U.S. 66, 78 (1985)).

As stated above, the right to contribution and/or indemnity may also arise through the power of the federal courts to fashion a federal common law of contribution and/or indemnity. *Tex. Indus., Inc.*, 451 U.S. at 638. Although it is well known that there is "no federal *general* common law," *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938) (emphasis added), the Supreme Court has recognized the need in very limited areas to formulate "federal common law."[10] *Tex. Indus., Inc.*, 451 U.S. at 640. These instances are "few and restricted," *Wheeldin v. Wheeler*, 373 U.S. 647, 651 (1963), and fall into essentially two categories: (1) those in which a federal rule is "necessary to protect a uniquely federal interest," *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 426 (1964), such as the definition of rights and duties of the United States, or the resolution of interstate controversies, *Northwest Airlines,* 451 U.S. at 95; and (2) those in which Congress has given the court the power to develop substantive law, *Tex. Indus., Inc.*, 451 U.S. at 640,

---

[10] The Supreme Court has also cautioned that "federal courts, unlike their state counterparts, are courts of limited jurisdiction that have not been vested with open-ended lawmaking powers." *Northwest Airlines, Inc.*, 451 U.S. at 95. "Thus, once Congress addresses a subject, even a subject previously governed by federal common law, the justification for lawmaking by federal courts is greatly diminished. Thereafter the task of the federal courts is to interpret and apply statutory law, not to create common law." *Id.* at 95 n.34.

such as the judiciary's right to develop a body of labor law based upon the congressional grant of power under section 301 of the Labor Management Relations Act to do such. *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 457 (1957).

As in *Texas Industries*, the rights to contribution and/or indemnity among alleged violators of the FHA and/or Title 42, Chapter 21, civil rights legislation do "not involve the duties of the Federal Government, the distribution of powers in our federal system, or matters necessarily subject to federal control even in the absence of statutory authority." *Tex. Indus., Inc.*, 451 U.S. at 642. Accordingly, these rights do not implicate "'uniquely federal interests' of the kind that oblige courts to formulate federal common law." *Id.* Thus, defendants' right to contribution and/or indemnity in the instant case would only exist under federal common law if Congress had given federal courts the authority to develop federal common law under these particular statutory schemes. *See id.*

### A. There is no federal right to contribution and/or indemnity under the Fair Housing Act.

The Second Circuit has not addressed the issue of whether there is a right to contribution or indemnity under the FHA. Indeed, to date, the only courts to have addressed the issue are *United States v. Quality Built Constr., Inc.*, 309 F. Supp. 2d 767 (E.D.N.C. 2003), *United States v. Gambone Bros.*

*Dev. Co.*, No. 06 Civ. 1386, 2008 U.S. Dist. LEXIS 73503 (E.D. Pa. Sept. 25, 2008), *United States v. Shanrie Co., Inc.*, No. 07 Civ. 491-DRH, 2009 U.S. Dist. LEXIS 13585 (S.D. Ill. Feb. 23, 2009) and *Equal Rights Ctr. v. Archstone Smith Trust*, No. AMD 04 Civ. 3975, 2009 U.S. Dist. LEXIS 23301 (D. Md. Mar. 18, 2009); *United States v. Yonkers Branch-Nat'l Assoc. for the Advancement of Colored People*, 594 F. Supp. 466 (S.D.N.Y. 1984). Nevertheless, the court is persuaded by the reasoning in these cases, which is predominantly grounded in the Supreme Court's analysis in *Northwest Airlines, Inc. v. Transport Workers Union of Am.*, 451 U.S. 77 (1981), and finds that there is no right to contribution and/or indemnity under the FHA.

The Fair Housing Act does not provide an express right to contribution or indemnity. *See* 42 U.S.C. §§ 3601 *et seq*. Therefore, the question before the court is whether Congress intended to create a right to contribution and/or indemnity under the FHA, *i.e.* whether a cause of action for contribution or indemnity is implied by the statutes themselves. Indeed, the Supreme Court has instructed that where a right of contribution is not expressly stated in a statute, "[t]his omission, although significant, is not dispositive if, among other things, the language of the statute[] indicates that [it] w[as] enacted for the special benefit of a class of which [the plaintiff] is a

member." *Northwest Airlines, Inc.,* 451 U.S. at 91-2 (footnote omitted).

A consideration of the language of the FHA demonstrates that the UH Defendants and U.S. Bank "are clearly not among the class which the statute[s are] intended to protect, but rather are the parties whose conduct the statute[s are] intended to regulate." *Quality Built Constr., Inc.*, 309 F. Supp. 2d at 778. The definition of an aggrieved person entitled to bring an action under the FHA "includes any person who -- (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such a person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. § 3602(i). A "'[d]iscriminatory housing practice' means an act that is unlawful under section 804, 805, 806, or 818 [codified at 42 U.S.C. §§ 3604, 3605, 3606, or 3617]." 42 U.S.C. § 3602(f). Thus, a discriminatory housing practice includes "discriminat[ing] against any person in the terms, conditions, or privileges of sale or rental of a dwelling . . . ," 42 U.S.C. § 3604(b), or "in the terms or conditions of [residential real estate-related] transaction[s, *e.g.*, the making or purchasing of loans], because of race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. § 3605(a).

Neither the UH Defendants nor U.S. Bank are "aggrieved persons" entitled to relief under the FHA. The UH Defendants are not persons who have been discriminated against "in the terms, conditions or privileges of sale or rental of a dwelling" because of their "race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b); *see Gambone Bros. Dev. Co.*, 2008 U.S. Dist. LEXIS 73503, at *26-7; *Shanrie Co., Inc.*, 2009 U.S. Dist. LEXIS 13585, at *7-8. Rather, it is the UH Defendants who allegedly discriminated against first-time minority home-buyers, including the plaintiffs, "in the terms, conditions or privileges of sale . . . of a dwelling" because of plaintiffs' race. (*See* Compl. ¶ 2.) Similarly, U.S. Bank is not a person who has been discriminated against "in the terms or conditions" of a mortgage because of "race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. § 3605(a); *see Gambone Bros. Dev. Co.*, 2008 U.S. Dist. LEXIS 73503, at *26-27; *Shanrie Co., Inc.*, 2009 U.S. Dist. LEXIS 13585, at *7-8. Rather, U.S. Bank is the current holder of the plaintiffs' allegedly predatory mortgages, which were issued to them by U.S. Bank's assignor, Alliance. (*See* Compl. ¶ 2.)

Next, the legislative history is considered to determine whether anything in the history of the statutes supports a right to contribution and/or indemnity. *Northwest*

*Airlines, Inc.*, 451 U.S. at 91.  When it passed the Fair Housing
Amendments Act in 1988,

> Congress, in discussing the need for
> enhancing remedies to combat discrimination
> in housing, determined that enforcement
> should be bolstered by giving HUD new
> powers, not by permitting co-defendants to
> sue each other for contribution [and/or
> indemnity].  See H.R. Rep. No. 100-711, at
> 16, *reprinted in* 1988 U.S.C.C.A.N. 2173,
> 2177.  Notably, in discussing the need for
> additional private party remedies, the House
> Report states that "Section 813(c) provides
> for the types of relief a court may grant.
> **This section is intended to continue the
> types of relief that are provided under
> current law**, but removes the $ 1000
> limitation on the award of punitive
> damages."  *Id.* at 39-40, 1988 U.S.C.C.A.N.
> 2200-01 (emphasis added; internal footnotes
> omitted.)

*Gambone Bros. Dev. Co.*, 2008 U.S. Dist. LEXIS 73503, at *31
(emphasis in original; footnote omitted).  Accordingly, in the
case of the FHA, "[t]here is nothing in the legislative history
. . . which states or implies a right to contribution [and/or
indemnity] on behalf of [the] [d]efendants."  *Quality Built
Constr., Inc.*, 309 F. Supp. 2d at 779; *Shanrie Co., Inc.*, 2009
U.S. Dist. LEXIS 13585, at *9 (same).

Third, the Supreme Court also advises courts to
consider the underlying purpose and structure of the statutory
scheme to ascertain whether "[t]he comprehensive character of
the remedial scheme expressly fashioned by Congress strongly
evidences an intent *not* to authorize additional remedies."

*Northwest Airlines, Inc.*, 451 U.S. at 93-94 (emphasis added).

If "neither the statute nor the legislative history reveals a congressional intent to create a private right of action for the benefit of the plaintiff," the four-part inquiry articulated in *Cort*, 422 U.S. at 78 and applied in *Northwest Airlines* need not be carried further. *Northwest Airlines, Inc.*, 451 U.S. at 94 n. 31. Indeed, "[t]he presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement." *Tex. Indus., Inc.*, 451 U.S. at 645. A review of the FHA reveals that, like the statutes at issue before the Supreme Court in *Northwest Airlines* and *Texas Industries*, the FHA is a comprehensive statute and nothing in its structure supports a right to contribution and/or indemnity. *See Gambone Bros. Dev. Co.*, 2008 U.S. Dist. LEXIS, at *29; *Quality Built Constr., Inc.*, 309 F. Supp. 2d at 778; *see also Northwest Airlines, Inc.*, 451 U.S. at 93. "In structuring the FHA[], Congress failed to provide a contribution or indemnification remedy for one defendant against a . . . co-defendant. The failure to include such a remedy 'raises the presumption that Congress deliberately intended that each [co-defendant] have a non-indemnifiable, non-delegable duty to comply with the FHA.'" *Shanrie Co., Inc.*, 2009 U.S. Dist. LEXIS 13585, at *8-9 (quoting *Gambone Bros. Dev. Co.*, 2008 U.S. Dist.

22

LEXIS 73503, at *29).  "Nothing in the structure of the FHA[]
supports a finding that a right to contribution [and/or
indemnity] is implied."  *Quality Built Constr., Inc.*, 309 F.
Supp. 2d at 778.

The comprehensive character of the FHA also precludes
a finding that a federal common law right to contribution and/or
indemnity exists under the FHA.  As noted above, as the right to
contribution and/or indemnity under the FHA does not implicate
"uniquely federal interests," the defendants' right to
contribution and/or indemnity in the instant case would only
exist under federal common law if Congress had given the federal
courts the authority to develop common law under the FHA.  *See
Tex. Indus., Inc.*, 451 U.S. at 641.  Congress, however, created
the FHA as a comprehensive remedial statute and in doing so, did
not include any provision permitting the federal courts to
develop federal common law under the FHA.  "In sum, the
unmistakable thrust of Supreme Court precedent is that Congress'
selection (and non-selection) of remedies in comprehensive
remedial federal statutes, especially anti-discrimination
statutes, is not a proper subject with which federal or state
courts ought to tinker."  *Equal Rights Ctr.*, 2009 U.S. Dist.
LEXIS 23301, at *22-23.

Accordingly, consistent with the Supreme Court's
analysis in *Northwest Airlines* and *Texas Industries*, as well as

the limited precedent available from other circuits, the court

finds that nothing suggests that Congress intended to create a

right to contribution and/or indemnity under the FHA or to

permit the federal courts to create a federal common law right

to contribution and/or indemnity under the FHA.  Thus, the court

holds that there is no right to contribution or indemnity under

the FHA.

> **B. There is no federal right to contribution and/or indemnity under the Civil Rights Acts, 42 U.S.C. §§ 1981, 1982 & 1985.**
>
> > **1. The Civil Rights Acts do not provide for an implied cause of action for contribution and/or indemnity.**

The Civil Rights Acts embodied in sections 1981,[11]

1982[12] and 1985[13] of Title 42, Chapter 21 of the United States

---

[11]      Section 1981 provides in relevant part:

> All persons within the jurisdiction of the
> United States shall have the same right in
> every State and Territory to make and
> enforce contracts, to sue, be parties, give
> evidence, and to the full and equal benefit
> of all laws and proceedings for the security
> of persons and property as is enjoyed by
> white citizens, and shall be subject to like
> punishment, pains, penalties, taxes,
> licenses, and exactions of every kind, and
> to no other.

42 U.S.C. § 1981(a).

[12]      Section 1982 provides:

> All citizens of the United States shall have
> the same right, in every State and

Code do not provide an express right to contribution or indemnity. *See* 42 U.S.C. §§ 1981, 1982 & 1985. Further, the court finds that no implied cause of action for contribution and/or indemnity exists under the Civil Rights Acts.

In considering the first factor under the *Northwest Airlines* analysis, there is nothing in the language of the Civil Rights Acts that indicates that these statutes "were enacted for

---

  Territory, as is enjoyed by white citizens
  thereof to inherit, purchase, lease, sell,
  hold, and convey real and personal property.

42 U.S.C. § 1982.

[13]  Section 1985 provides in relevant part:

  If two or more persons in any State or
  Territory conspire . . . for the purpose of
  depriving . . . any person or class of
  persons of the equal protection of the laws,
  or of equal privileges and immunities under
  the laws, or for the purpose of preventing
  or hindering the constituted authorities of
  any State or Territory from giving or
  securing to all persons within such State or
  Territory the equal protection of the laws;
  . . . in any case of conspiracy set forth in
  this section, if one or more persons engaged
  therein do, or cause to be done, any act in
  furtherance of the object of such
  conspiracy, whereby another is injured in
  his person or property, or deprived of
  having and exercising any right or privilege
  of a citizen of the United States, the party
  so injured or deprived may have an action
  for the recovery of damages, occasioned by
  such injury or deprivation, against any one
  or more of the conspirators.

42 U.S.C. § 1985(3).

the special benefit of a class of which [either the UH Defendants or U.S. Bank] is a member." *Northwest Airlines, Inc.,* 451 U.S. at 91-92 (footnote omitted). Rather, as with the FHA, the UH Defendants and U.S. Bank are the parties whose conduct the Civil Rights Acts are intended to regulate. It is the UH Defendants and U.S. Bank (as assignee of the plaintiffs' mortgages) who are alleged to have deprived plaintiffs of their right to the "full and equal benefit of all laws" "to make and enforce contracts," 42 U.S.C. § 1981, to purchase real property, 42 U.S.C. § 1985, and who are alleged to have engaged in a conspiracy to do so, *id.* (*See* Compl. ¶ 2.) Contribution and/or indemnity rights should not be read into federal statutes to protect the persons regulated by the statute at the expense of the persons protected by the statute. *Northwest Airlines, Inc.*, 451 U.S. at 91-92 ("Neither the Equal Pay Act nor Title VII expressly creates a right to contribution in favor of employers . . . [as] it cannot possibly be said that employers are members of the class for whose especial benefit either the Equal Pay Act or Title VII was enacted"); *Tex. Indus., Inc.*, 451 U.S. at 639-40 ("Moreover, it is equally clear that the Sherman Act and the provision for treble-damages actions under the Clayton Act were not adopted for the benefit of the participants in a conspiracy to restrain trade. On the contrary, petitioner is a member of the class whose activities Congress intended to regulate for the

protection and benefit of an *entirely distinct class* . . . .
The absence of any reference to contribution in the legislative
history or of any possibility that Congress was concerned with
softening the blow of joint wrongdoers . . . [indicates] that
Congress neither expressly or implicitly intended to create a
right to contribution.") (emphasis in original; citations and
quotations omitted).

The language of the Civil Rights Acts, as well as the
legislative histories of sections 1981, 1982 and 1985, the
second factor of the *Northwest Airlines* inquiry, demonstrate
that the purpose of the Civil Rights Acts is "'to protect from
discrimination identifiable classes of persons who are subjected
to intentional discrimination because of their ancestry or
ethnic characteristics.'" *Reyes v. Erickson*, 238 F. Supp. 2d
632, 638 (S.D.N.Y. 2003) (quoting *Saint Francis Coll. V. Al-
Khazraji,* 481 U.S. 604, 613 (1987)) (discussing the purpose of
section 1981); *CBOCS West, Inc. v. Humphries*, 128 S. Ct. 1951,
1956 (2008) ("the Court has construed §§ 1981 and 1982 alike
because it has recognized the sister statutes' common language,
origin, and *purposes*. Like § 1981, § 1982 traces its origin to
§ 1 of the Civil Rights Act of 1866 [("1866 Act")], 14 Stat. 27.
Like § 1981, § 1982 represents an immediately post-Civil War
legislative effort to guarantee the then newly freed slaves the
same legal rights that other citizens enjoy. . . . Indeed, §

1982 differs from § 1981 only in that it refers, not to the 'right . . . to make and enforce contracts,' 42 U.S.C. § 1981(a), but to the 'right . . . to inherit, purchase, lease, sell, hold, and convey real and personal property.'") (emphasis added) (citations omitted).  Similarly, "[s]ection 1985 has its historical roots in the Civil Rights Act of 1871 . . . which is commonly referred to as the Ku Klux Klan Act. . . .  [T]he objective of the 1871 Act was . . . to protect blacks and black sympathizers from rampant vigilantism in the South and to ensure these oppressed groups access to the courts and polling places." *Keating v. Carey*, 706 F.2d 377, 389-90 (2d Cir. 1983) (Meskill, J. concurring and dissenting); *Griffin v. Breckenridge,* 403 U.S. 88, 100 (1981) ("The object of [section 1985(3)] is . . . to confine the authority of this law to the prevention of deprivations which shall attack the equality of rights of American citizens; that any violation of the right, the *animus* and effect of which is to strike down the citizen, to the end that he may not enjoy equality of rights as contrasted with his and other citizens' rights, shall be within the scope of the remedies of this section.") (quotations omitted).  Thus, the legislative histories of sections 1981, 1982 and 1985 clearly indicate that Congress did not intend to provide defendants, *i.e.*, those who allegedly discriminated against persons protected by the Civil Rights Acts, with any rights to alleviate

28

the liabilities resulting from their discriminatory conduct, including rights to contribution and/or indemnity.

Nor does the third factor of the *Northwest Airlines* analysis, *i.e.* the underlying purpose and the structure of the statutory scheme, weigh in favor of allowing contribution and/or indemnity claims under the Civil Rights Acts. As set forth above, the "underlying purpose" of the Civil Rights Acts is to protect individuals from discrimination. Thus, although the structure of the Civil Rights Acts could be interpreted to "authorize additional remedies" under § 1988[14] of the Civil

---

[14]     Section 1988 provides in relevant part:

> The jurisdiction in civil and criminal
> matters conferred on the district and
> circuit courts [district courts] by the
> provisions of this Title, and of Title
> "CIVIL RIGHTS," and of Title "CRIMES," for
> the protection of all persons in the United
> States in their civil rights, and for their
> vindication, shall be exercised and enforced
> in conformity with the laws of the United
> States, so far as such laws are suitable to
> carry the same into effect; but in all cases
> where they are not adapted to the object, or
> are deficient in the provisions necessary to
> furnish suitable remedies and punish
> offenses against law, the common law, as
> modified and changed by the constitution and
> statutes of the State wherein the court
> having jurisdiction of such civil or
> criminal cause is held, so far as the same
> is not inconsistent with the Constitution
> and laws of the United States, shall be
> extended to and govern the said courts in
> the trial and disposition of the cause, and,
> if it is of a criminal nature, in the

Rights Acts, the court finds that § 1988 does not "authorize additional remedies" for the benefit of defendants who allegedly engaged in the prohibited discriminatory conduct. *Cf. Northwest Airlines, Inc.,* 451 U.S. at 93-94 (if "the comprehensive character of the remedial scheme expressly fashioned by Congress strongly evidences an intent not to authorize additional remedies," then the presumption that a remedy not expressly provided for in the legislative scheme was deliberately omitted is strong.)

In line with Supreme Court precedent, the court recognizes that, *inter alia*, section 1988 renders the statutory scheme of the Civil Rights Act less comprehensive than the legislative schemes provided by the FHA or Title VII, for example.

> The century-old Civil Rights Acts do not
> contain every rule of decision required to
> adjudicate claims asserted under them.  In
> the absence of specific guidance, Congress
> has directed federal courts [under 42 U.S.C.
> § 1988] to follow a three-step process to
> borrow an appropriate rule.  42 U.S.C. §
> 1988.  First, courts are to look to the laws

---

> infliction of punishment on the party found
> guilty.

42 U.S.C. § 1988(a).  Section 1988 is part and parcel of the
Civil Rights Acts and can be applied to determine the
availability of a cause of action, if any, under the 1866 Act,
now codified at 42 U.S.C. §§ 1981 & 1982, and the Civil Rights
Act of 1871 ("1871 Act"), now codified at 42 U.S.C. §§ 1983 &
1985. *Moor v. County of  Alameda*, 411 U.S. 693, 702 & n.13
(1973).

of the United States "so far as such laws
are suitable to carry [the civil and
criminal civil rights statutes] into
effect." *Ibid*. If no suitable federal rule
exists, courts undertake the second step by
considering application of state "common
law, as modified and changed by the
constitution and statutes" of the forum
State. *Ibid*. A third step asserts the
predominance of the federal interest: courts
are to apply state law only if it is not
"inconsistent with the Constitution and laws
of the United States." *Ibid*.

*Burnett v. Grattan*, 468 U.S. 42, 47-48 (1984).

The court finds, however, in keeping with the
underlying purpose of the Civil Rights Acts, that Congress did
not intend to create an implied cause of action for contribution
and/or indemnity to benefit defendants sued under the Civil
Rights Acts. *See Gray v. City of Kansas City*, 603 F. Supp. 872,
874 (D. Kan. 1985) ("Although [the Civil Rights Acts] are less
comprehensive than either Title VII or the Equal Pay Act (a
factor cited in *Northwest Airlines* as tending to negate any
implied contribution remedy under those statutes), we attach
little weight to this distinction. The federal antitrust laws
are at least as skeletal as these civil rights statutes, and yet
they have been held to create no implied cause of action for
contribution.")

The "presumption" that the remedy of contribution
and/or indemnity was deliberately omitted from the Civil Rights
Acts may not be as strong as in those circumstances when

Congress has "enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement," *e.g.* Title VII or the FHA. *Tex. Indus., Inc.*, 451 U.S. at 645 (quotations omitted). In light of the clear legislative histories and language of the Civil Rights Acts evidencing no congressional intent to include any rights to contribution and/or indemnity among co-defendants, the court finds that the right to contribution and/or indemnity under the Civil Rights Acts was deliberately omitted by Congress.

> **2.  There is no right for contribution and/or indemnity under federal common law.**

Neither can claims for indemnity and/or contribution exist under federal common law as the right to contribution and/or indemnity under the Civil Rights Acts does "not involve the duties of the Federal Government, the distribution of powers in our federal system, or matters necessarily subject to federal control even in the absence of statutory authority," and thus, does not implicate "'uniquely federal interests' of the kind that oblige courts to formulate federal common law." *Id*. at 642. Defendants' right to contribution and/or indemnity in the instant case, therefore, would only exist under federal common law, if Congress, through the Civil Rights Acts, had given federal courts the authority to develop federal common law in

relation to the Acts. *See id.* Congress never bestowed such an authority on the federal courts.

While it is true that section 1988 permits the federal courts, in the absence of suitable federal law provisions, to consider state common law in adjudicating causes of action under the Civil Rights Acts, section 1988 does not authorize federal courts to create federal common law.[15] Rather, as the Supreme Court unambiguously stated in *Moor*: "§ 1988 . . . was obviously intended to do nothing more than to explain the *source of law* to be applied in actions brought to enforce the substantive provisions of the [Civil Rights] Act[s] . . . . To hold otherwise would tear § 1988 loose from its roots in § 3 of the 1866 Civil Rights Act. This we will not do." *Moor*, 411 U.S. at 705 (emphasis added). Simply stated, section 1988 is a choice of law provision, nothing more. *See Hepburn*, 324 F. Supp. 2d at 757; *Johnson*, 575 F.2d at 474.[16] Thus, the court finds that

---

[15]       *But cf. Wright v. B.J. Reynolds, Inc.*, 703 F. Supp. 583, 591 (N.D. Tex. 1988).

[16]       The Supreme Court cautions, however, that Section 1988 is intended only to "instruct[] federal courts as to what law to apply in causes of actions arising under federal civil rights acts," and was not "meant to authorize the wholesale importation into federal law of state causes of action." Moor, 411 U.S. at 703-04. Thus, "[s]ection 1988 does not create any additional causes of action; it merely provides the applicable law in actions that are already proper under civil rights statutes . . . ." *Hepburn v. Athelas Inst., Inc.*, 324 F. Supp. 2d 752, 757 (D. Md. 2004); *Johnson v. Ryder Truck Lines, Inc.*, 575 F.2d 471, 474 (4th Cir. 1978) (same). "However, because contribution [and

there is neither an implied nor a federal common law right to
contribution and/or indemnity under the Civil Rights Acts, 42
U.S.C. §§ 1981, 1982 and 1985.

> **3.  Section 1988 does not provide an independent
>     right to contribution and/or indemnity.**

As noted above, no federal law exists with regard to
the rights to contribution and/or indemnity; there is no
provision for contribution and/or indemnity in sections 1981,
1982 or 1985, nor is there a federal common law right to
contribution and/or indemnity.[17]  *See* 42 U.S.C §§ 1981, 1982 &

---

indemnity are] derivative in nature, a claim for contribution
[or indemnity] may not[, without more,] constitute a prohibited
additional cause of action under § 1988." *Hepburn*, 324 F. Supp.
2d at 757.

[17]     Prior to the Supreme Court's decision in *Northwest
Airlines,* the Third Circuit in *Miller v. Apartments & Homes of
N.J., Inc.*, 646 F.2d 101 (3d Cir. 1981), held that, applying 42
U.S.C. § 1988, "federal law determine[d] the availability of
contribution in federal civil rights suits requir[ing the Court
of Appeals] to determine what that rule is where one of two
defendants settles with a plaintiff before a trial." *Id.* at
108.  The Third Circuit ultimately held that, in the context of
a § 1982 action, defendants adjudicated to be liable may have
the amount of liability reduced by the amount paid by settling
co-defendants. *Id.* at 110.
        *Miller* and its progeny, however, have been widely
criticized as inconsistent with the Supreme Court decisions in
*Northwest Airlines* and *Texas Industries*. *See Gray v. City of
Kansas City*, 603 F. Supp. 872, 875 (D. Kan. 1985); *Katka v.
Mills*, 422 F. Supp. 2d 1304, 1308 (N.D. Ga. 2006).  Even a
district court in the Third Circuit has characterized the
continued "precedential value of *Miller* suspect." *Diaz-Ferrante
v. Rendell*, No. 95 Civ. 5430, 1998 U.S. Dist. LEXIS 5391, at *11
n.1 (E.D. Pa. Mar. 31, 1998).  Moreover, the majority of cases
decided since *Northwest Airlines* have held that there is no
right to contribution under § 1983. *Katka,* 422 F. Supp. 2d at

34

1985; *see also Northwest Airlines, Inc.*, 451 U.S. at 86 ("At

common law there was no right to contribution among joint

tortfeasors.")  Thus, where "federal law is unsuited or

insufficient 'to furnish suitable remedies,'" section 1988

authorizes federal courts to invoke state law so long as the

state law provides a remedy that is "not inconsistent with the

Constitution and laws of the United States."  *Moor*, 411 U.S. at

703.

---

1308-09 (citing *Hepburn,* 324 F. Supp. 2d at 760; *Wright v. B.J. Reynolds, Inc.*, 703 F. Supp. 583, 592 (N.D. Tex. 1988); *Gray,* 603 F. Supp. at 875; *Banks v. City of Emeryville,* 109 F.R.D. 535, 539 (N.D. Cal. 1985); *TCI Cablevision, Inc. v. City of Jefferson,* 604 F. Supp. 845, 847 (W.D. Mo. 1984); *Valdez v. City of Farmington,* 580 F. Supp. 19, 20-21 (D.N.M. 1984); *Anderson v. Local Union No. 3, Int'l Brotherhood of Elec. Workers*, 582 F. Supp. 627, 631 (S.D.N.Y. 1984); *Melson v. Kroger Co.,* 578 F. Supp. 691, 696 n.3 (S.D. Ohio 1983)); *see also Diaz-Ferrante*, 1998 U.S. Dist. LEXIS 5391, at *10-11 (collecting cases).

    The basis for the Third Circuit's holding in *Miller* was its own holding in *Glus v. G.C. Murphy Co.,* 629 F.2d 248 (3d Cir. 1980), which held that a federal right for contribution existed under Title VII.  *Miller*, 646 F.2d at 107 ("Nothing in this case suggests that a different analysis or a different result [from *Glus* under Title VII] should follow in a civil rights case.")  *Glus* was subsequently vacated by the Supreme Court and remanded to the Third Circuit for further consideration consistent with *Northwest Airlines*.  *Retail, Wholesale & Dep't Store Union v. G. C. Murphy Co.*, 451 U.S. 935 (1981).  On remand, the Third Circuit held that, pursuant to the Supreme Court's decision in *Northwest* Airlines, a federal right to contribution did not exist under Title VII.  *Retail, Wholesale & Dep't Store Union v. G.C. Murphy Co.*, 654 F.2d 944, 946 (3d Cir. 1981).  Thus, although *Miller* has not yet been overturned, the precedential value of the Third Circuit's decision in *Miller* is questionable in light of the fact that the foundation for the Third Circuit's decision in *Miller* was reversed as inconsistent with *Northwest Airlines*.

Although New York law generally allows contribution claims under Section 1401 of the New York Civil Practice Law and Rules, N.Y. C.P.L.R. § 1401 (2009), and indemnity claims under New York common law, *see Rosado v. Proctor & Schwarz, Inc.*, 66 N.Y.2d 21, 23 (1985), these state law claims for contribution and/or indemnity must be compared with the principles underlying the federal Civil Rights Acts in accordance with the three step analysis outlined in *Burnett*. *See Burnett*, 468 U.S. at 47-48. If the court finds an inconsistency between the application of the state law and the principles of the federal legislation, the state law will be rejected. In the instant case, the court agrees with decisions issued in this Circuit holding that such state law claims for contribution and/or indemnification are "irrelevant to and inconsistent with the purpose and policy of the federal civil rights laws, and [are], therefore, specifically excluded from consideration under 42 U.S.C. § 1988." *Koch v. Mirza,* 869 F. Supp. 1031, 1041 (W.D.N.Y. 1993).

As previously discussed, the "primary objectives [of the 1866 and 1871 Acts] were to establish and protect federal civil rights and thereby remove from the legal system, the discrimination created by slavery and its incidents." *Id*. at 1041; *Reyes*, 238 F. Supp. 2d at 638; *Griffin*, 403 U.S. at 100. And section 1988, which "first appeared in Section 3 of the Civil Rights Act of 1866, 14 Stat. 27 (1866)," *Koch,* 869 F.

Supp. at 1040., provided the "*necessary machinery to give effect to* what are declared to be the rights of all persons in [the 1866 and 1871 Acts and the Constitution]." *Koch*, 869 F. Supp. at 1041 (emphasis in original). Thus, based on this legislative history, the application of state law under § 1988 would be inconsistent with the objectives of the Civil Rights Acts as state law claims for contribution and/or indemnity claims do not assist "federal civil rights plaintiffs in pursuing their claims." *Id.* Rather, such claims would actually assist the alleged violators of the Civil Rights Acts.[18] *Koch*, 869 F. Supp. at 1041.

Moreover, contribution and/or indemnity claims may actually hinder a plaintiff's ability to obtain relief under the Civil Rights Acts by "inject[ing] issues into the litigation which could interfere with the prompt and orderly trial of such cases," *id.*, or, as here, by threatening to frustrate the settlement of claims against co-defendants. Accordingly, "it is clear that common law or statutory indemnity and contribution principles serve different interests than the constitutional

---

[18]     Examples of state law claims and/or rules which assist plaintiffs in pursuing their civil action for a denial of their federal civil rights in federal court, include: "[r]ules of evidence (until adoption of the Federal Rules of Evidence in 1973), substantive law, such as the torts of false arrest and malicious prosecution, which aid in defining unreasonable seizures and due process violations, and the law of damages . . . . ." *Id.*

values sought to be vindicated in [an] action [brought under the Civil Rights Acts]," and § 1988 cannot serve as an avenue through which a state law claim for contribution and/or indemnity may be brought.[19] *Koch*, 869 F. Supp. at 1041.

## III. Under N.Y. Gen. Oblig. Law § 15-108, There Is No Right To Contribution From Settling Defendants.

New York provides for a statutory right of contribution under N.Y. C.P.L.R. § 1401, which provides in relevant part:

> Except as provided in section[] 15-108 . . . of the general obligations law, . . . two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought.

N.Y. C.P.L.R. § 1401. Although contribution is most commonly sought between joint tortfeasors, section 1401 is "intentionally open-ended" and only requires that there be "'two or more persons who are subject to liability for damages for the same

---

[19] Moreover, irrespective of the inconsistencies between state and federal law barring the right to contribution under § 1988, N.Y. C.P.L.R. § 1401 would not provide a right to contribution under the circumstances presented. While it is correct that section 1401 permits New York state law contribution claims, New York General Obligation Law § 15-108, as discussed *infra*, "does *not* permit such claims for contribution to be asserted against any defendant that has already settled with the plaintiff . . . ." *Carrion v. City of New York*, No. 01 Civ. 2255 (LAK) (DF), 2002 U.S. Dist. LEXIS 17829, at *8-9 (S.D.N.Y. Sept. 23, 2002) (emphasis in original).

personal injury, injury to property or wrongful death.'" 1-10
WEINSTEIN, JACK B., HAROLD L. KORN & ARTHUR R. MILLER, CPLR MANUAL §
10.02(a) (2008) (quoting N.Y. C.P.L.R. § 1401). "In
recommending the adoption of the section, the Judicial
Conference indicated its intent that the language be construed
as broadly as it read." *Id.* Accordingly, in addition to tort,
breach of warranty actions, actions based on statutory
violations, a variety of negligence actions, professional
malpractice actions, strict products liability actions, and
misrepresentation (fraud) actions are all actions in which
contribution could be claimed under section 1401. *See id.*
(citing *Moreno v. Galdorisi*, 336 N.Y.S.2d 646, 647 (2d Dep't
1972); *Schauer v. Joyce*, 54 N.Y.2d 1 (1981), *Hughes v. Ataka
Am., Inc.*, 369 N.Y.S.2d 723 (1st Dep't 1975); *Doundoulakis v.
Town of Hempstead*, 42 N.Y.2d 440 (1977); *Liggett & Myers, Inc.
v. Bloomfield*, 380 F. Supp. 1044 (S.D.N.Y. 1974); *Corva v.
United Servs. Auto. Ass'n*, 485 N.Y.S.2d 264 (1st Dep't 1985)).

Thus, under N.Y. C.P.L.R. § 1401, the UH Defendants'
claims for contribution could be founded on every state law
cause of action asserted by the plaintiffs in the three related
actions, including violations of New York's consumer protection
statute, *i.e.* New York General Business Law § 349, state and
local anti-discrimination statutes, including New York State
Executive Law § 296(5) and Title 8 of the New York City

Administrative Code, and plaintiffs' state-law claims for fraud, conspiracy to commit fraud, and negligence. Nevertheless, irrespective of the type of claim for which the UH Defendants seek contribution, if the Appraisers enter into a settlement agreement with the plaintiffs wherein they procure a release of plaintiffs' claims, the UH Defendants' claims for contribution against the Appraisers will be barred under New York General Obligation Law § 15-108.

N.Y. Gen. Oblig. Law § 15-108 provides in pertinent part:

> (a) . . . . When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest.

> (b) . . . . A release given in good faith by the injured person to one tortfeasor as provided in subdivision (a) relieves him from liability to any other person for contribution as provided in article fourteen of the civil practice law and rules . . . .

At the outset, the court notes that although § 15-108 is phrased solely in terms of "tortfeasors", § 15-108 is "applicable to any litigation in which a CPLR article 14 right of contribution arises." *County of Westchester v. Welton Becket Assocs.*, 478 N.Y.S.2d 305, 313 (2d Dep't 1984). As § 15-108(a) and (b) both make specific reference to contribution claims under article 14 of the C.P.L.R., C.P.L.R. § 1401 must be read in conjunction with N.Y. Gen. Oblig. Law § 15-108. *Welton Becket Assocs.*, 478 N.Y.S.2d at 313; *see McDermott v. City of New York*, 50 N.Y.2d 211, 219 (1980) ("'[even] upon a cursory reading of the statute, it becomes evident that section 15-108 is meant to be read in conjunction with the contribution rights set forth in article 14 of the CPLR") (quoting *Riviello v. Waldron*, 47 N.Y.2d 297, 306 (1979)). Accordingly, as section 1401 "is applicable to any situation in which two or more persons can be held liable for causing the same injury," so is N.Y. Gen. Oblig. Law § 15-108 applicable. *Welton Becket Assocs.*, 478 N.Y.S.2d at 313; *see Minpeco, S.A. v. Conticommodity Servs., Inc.*, 677 F. Supp. 151, 153 (S.D.N.Y. 1988) ("Although the language of the statute refers to torts, it has been interpreted to bar claims for contribution arising under common law fraud and state securities fraud statutes.") (citing *First Fed. Sav. & Loan v. Oppenheim, Appel, Dixon & Co.*, 631 F. Supp. 1029 (S.D.N.Y. 1986)). Thus, section 15-108 will

bar any claim for contribution against the Appraisers, provided
that they enter into settlement agreements with and obtain
releases from the plaintiffs, where the contribution claims are
derivative of the state claims sounding in tort, contract,
statutory violations, fraud and/or negligence.

Like the circumstances present in the instant case,
"[t]he [New York State] Legislature recognized that contribution
rights [sometimes had] the unintended consequence of inhibiting
out-of-court settlements" in multi-party actions. *Orsini v.
Kugel*, 9 F.3d 1042, 1046 (2d Cir. 1993). Thus, the legislature
enacted § 15-108 to limit non-settling defendants' (and/or third
parties') rights to recover contribution from settling
defendants. *See id.* The primary purpose of section 15-108,
therefore, is to "'promote settlements in multi-party . . .
cases,'" *Carrion*, 2002 U.S. Dist. LEXIS 17829, at *11 (quoting
*Rock v. Reed-Prentice Div. of Package Mach. Co.*, 382 N.Y.S.2d
720, 723 (1976)), by permitting a settling defendant to "buy[]
his peace." *Conrad v. Beck-Turek*, Ltd., 891 F. Supp. 962, 965-66
(S.D.N.Y. 1995) (Section 15-108 "extinguishes any claim for
contribution against the settling tortfeasor."); *Minpeco, S.A.*,
677 F. Supp. at 154 ("One of, if not the major purpose of [§ 15-
108] [is] to encourage settlement between plaintiffs and
defendants . . . .") Given the legislative purpose of the
statute, where, as here, certain of the co-defendants refuse

voluntarily to withdraw their claims for contribution against
the settling defendants, the court sees no reason why the co-
defendants' state law contribution claims should not be
dismissed pursuant to N.Y. Gen. Oblig. Law § 15-108.

Although promoting settlement in multi-party actions
is the primary purpose of section 15-108, U.S. Bank[20] is correct
that "the statute is concerned as well with assuring that a
nonsettling defendant does not pay more than its equitable
share," *i.e.,* non-settling defendants only pay proportional to
their liability. *Williams v. Niske*, 599 N.Y.S.2d 519, 523
(1993); *Whalen v. Kawasaki Motors Corp.* 92 N.Y.2d 288, 292
(1998) (Section 15-108 "is also concerned with ensuring
equity"). The court disagrees, however, with U.S. Bank's next
series of assumptions and summary conclusions. U.S. Bank
contends that, if plaintiffs secure judgment after trial, not
only will U.S. Bank "bear the entire cost of the judgment when
it should have to pay none of it," but also "[U.S. Bank] will
never be able to recover the Appraiser Defendants' portion of
judgment" thus conflicting with the payment proportionality goal
of § 15-108. (U.S. Bank Opp., p. 12.) Notably, U.S. Bank does
recognize that it would be entitled to a proportional offset of

---

[20]     As previously noted, U.S. Bank only seeks indemnity
and not contribution in its cross-claims against co-defendants,
and, as set forth herein, the court denies U.S. Bank's request
to amend its answer to include a cross-claim for contribution.

the settlement amounts and would still have the right to seek

contribution from its non-settling co-defendants, but "only to

the extent that each is found liable." (*Id.*)

> Indeed, in actions
>
> involving multiple defendants where a
> plaintiff settles with one or more
> defendants before trial, and proceeds to
> trial against the remaining defendants,
> General Obligations Law § 15-108 (a) permits
> nonsettling defendants a monetary offset
> against the amount of a verdict. The
> permitted reduction is the *greatest* of three
> items: (a) the amount stipulated as
> consideration for the release; (b) the
> amount actually paid for the release; or (c)
> the settling tortfeasor's equitable share of
> plaintiff's damages (General Obligations Law
> § 15-108 [a]).

*Whalen,* 92 N.Y.2d at 292 (emphasis added). Thus, at the very

least, U.S. Bank's damages, if any, will be reduced by the

greater of either what the court or the jury designates as the

Appraiser's equitable share of the liability or the amounts the

Appraisers agreed to pay or paid to the plaintiffs in their

respective settlement agreements. Accordingly, the court finds

that the dual goals of section 15-108, *i.e.*, promoting

settlement and ensuring equitable outcomes among the parties,

are best served by dismissing the UH Defendants' claims for

contribution if, and only if, the Appraisers settle and obtain

releases from the plaintiffs.

Moreover, the court recognizes that Section 15-108 states that a release relieves the settling party from "liability to *any* other person for contribution." *Minpeco, S.A.*, 677 F. Supp. at 154 (quotations omitted) (collecting cases). Insofar as any of the other co-defendants in the three related actions assert contribution claims against the Appraisers, they too will be barred if and when the Appraisers consummate a settlement and release with the plaintiffs. Thus, if, and only if, the Appraisers enter into binding settlement agreements with the plaintiffs in which the plaintiffs agree to release the Appraisers from any liability resulting from the underlying causes of action, the court will dismiss all state law contribution claims asserted against the Appraisers by their co-defendants as barred under N.Y. Gen. Oblig. Law § 15-108.

## IV. U.S. Bank's Request For Leave To Amend Its Answer To Include A Cross-Claim For Contribution Against The Appraisers Is Denied As Futile.

U.S. Bank only seeks indemnity and not contribution in its cross-claims against co-defendants. However, U.S. Bank now seeks to amend its answer to include a cross-claim for contribution against the Appraisers. The court denies this request.

Under Federal Rule of Civil Procedure 15(a)(2),

[t]he court should freely give leave [to amend pleadings] when justice so requires."
A "motion to amend should be denied if there

is an 'apparent or declared reason -- such
as undue delay, bad faith or dilatory motive
. . ., repeated failure to cure deficiencies
by amendments previously allowed, undue
prejudice to the opposing party by virtue of
the allowance of the amendment, [or]
futility of amendment.

*Dluhos v. Floating & Abandoned Vessel Known as "New York,"* 162

F.3d 63, 69 (2d Cir. 1998) (quoting *Foman v. Davis*, 371 U.S.

178, 182 (1962)).  An amendment is futile when the proposed new

claim would not withstand a motion to dismiss under Federal Rule

of Civil Procedure 12(b)(6).  *Milanese v. Rust-oleum Corp.*, 244

F.3d 104, 110 (2d Cir. 2001); *see Whimsicality, Inc. v. Battat*,

27 F. Supp. 2d 456, 465 (S.D.N.Y. 1998) (court may deny leave to

amend where the claim to be added would fail to state a claim

upon which relief may be granted).

As set forth above, if the Appraisers consummate their

settlements with the plaintiffs, a cross-claim for contribution

by U.S. Bank against the Appraisers would be subject to

"immediate dismissal" for failure to state a claim for which

relief may be granted.  *See Jones v. New York State Div. of*

*Military & Naval Affairs,* 166 F.3d 45, 55 (2d Cir. 1998).  Not

only does federal law foreclose a claim for contribution under

the FHA and the Civil Rights Acts, but N.Y. Gen. Oblig. Law §

15-108 also forecloses a state law claim for contribution by

U.S. Bank against the settling Appraisers.  Accordingly, U.S.

Bank's motion to amend its complaint to add a claim for

contribution against the Appraisers is denied, provided the

Appraisers consummate a settlement with and obtain a release

from the plaintiffs.  Moreover, as discussed *infra*, U.S. Bank's

motion to amend is also denied on the basis of undue delay and

prejudice to the opposing party.

V.  **Under New York Law, The UH Defendants And U.S. Bank Are Not Entitled To Indemnity From The Appraisers.**

> Under New York law,
>
> Indemnity . . . involves an attempt to shift
> the entire loss from one who is compelled to
> pay for a loss, without regard to his own
> fault, to another person who should more
> properly bear responsibility for that loss
> because he was the actual wrongdoer.  The
> right to indemnification may be created by
> express contract, but the contract is often
> one implied by law to prevent an unjust
> enrichment or an unfair result.

*Welton Becket Assocs.*, 478 N.Y.S.2d at 314; *Hayden v. Hevesi*,

No. 05 Civ. 0294E(Sr), 2007 U.S. Dist. LEXIS 10336, at *12

(W.D.N.Y. Feb. 12, 2007) ("under New York law, indemnification

is available only where there is evidence of either an express

or implied agreement between the parties.") (citing *Rosado v.

Proctor & Schwartz, Inc.*, 494 N.Y.S.2d 851, 853 (1985)).  Here,

there are no express contracts between the Appraisers and the UH

Defendants or between the Appraisers and U.S. Bank.

Accordingly, a right to indemnification from the Appraisers, if

any, must be found in a contract implied by law ("implied

indemnification").

"Conceptually, implied indemnification finds its roots in the principles of equity. . . . Thus, the rule developed that '[where] payment by one person is compelled, which another should have made * * * a contract to reimburse or indemnify is implied by law' ( *Brown v Rosenbaum*, 287 NY 510, 518-519; *Dunn v Uvalde Asphalt Paving Co.*, *supra*, at pp 217-218)." *McDermott*, 428 N.Y.S.2d at 646. For example, New York courts have recognized an implied contract of indemnity in favor of a "passive[ly] negligen[t]" tortfeasor against an "actively negligent" tortfeasor. *Rock*, 382 N.Y.S.2d at 722. "The actively negligent tort-feasor is considered the primary or principal wrongdoer and is held responsible for his negligent act not only to the person directly injured thereby, but also to any other person indirectly harmed by being cast in damages by operation of law for the wrongful act." *Id.* (quotations omitted). As one court noted,

> [i]n some instances the law imposes liability on a person who has in fact committed no actual wrong, but who is held responsible for a loss *as a matter of social policy because he is in a position to spread the risk of the loss to society as a whole*. Thus, for example, an employer may be held liable for the wrongdoing of his employee, the owner of a vehicle may be held responsible for the tortious operation of the vehicle by another which results in injury, or an owner of property may be held liable for the wrongdoing of his contractor.

*Welton Becket Assocs.*, 478 N.Y.S.2d at 314 (citations omitted; emphasis added).  In such instances of vicarious liability, "[i]mplied indemnity is frequently employed in favor of one who is vicariously liable for the tort of another." *Rosado*, 494 N.Y.S.2d at 853.

Regardless of the circumstances, however, "an indemnity cause of action can be sustained *only* if the third-party plaintiff and the third-party defendant have breached a duty to plaintiff *and* also if some duty to indemnify exists between them." *Id.* (quotations omitted; emphasis added). Whether or not the UH Defendants, U.S. Bank, and the Appraisers do in fact owe a separate and distinct duty to the plaintiffs, the court finds that no duty to indemnify exists between either the Appraisers and the UH Defendants or the Appraisers and U.S. Bank, and thus, neither U.S. Bank nor the UH Defendants have a right to implied indemnification from the Appraisers.

The UH Defendants are correct that "privity of contract is not essential to the existence of an implied right of indemnity." (UH Defendants Opp., p. 9 (citing *Schwartz v. Merola Bros. Constr. Corp.*, 34 N.Y.S.2d 220 (1st Dep't 1942)). Nevertheless, implied indemnification is only available if an agreement to indemnify can be implied between the parties, *Hayden*, 2007 U.S. Dist. LEXIS 10336, at *12, due to some special relationship that exists between them or some obligation imposed

by law.  23 N.Y. Jur. 2d, *Contribution, Indemnity, and*

*Subrogation*, § 90.  No such special relationship or legal

obligation exists between the UH Defendants and the Appraisers.

Moreover, with respect to Alliance, as the "only duty an

appraiser owes is to the mortgage lender," *Phillips v. Better*

*Homes Dep't, Inc.*, No. 02 Civ. 1168 (ERK), 2003 U.S. Dist. LEXIS

27299, at *78 (E.D.N.Y. Nov. 12, 2003), the Appraisers are under

no legal obligation to indemnify the UH Defendants as sellers of

the property.

        The UH Defendants contend that if they are successful

in their defense of the three related actions, then they are

entitled, on the basis of implied indemnity, to recover from the

Appraisers their costs, expenses and attorneys' fees incurred in

defending the related actions.  (UH Defendants Opp., p. 10.)  In

support of this proposition, the UH Defendants cite only one

1986 decision from the County Court of New York, Erie County,

*Independence Leasing Corp. v. Aquino*, 506 N.Y.S.2d 1003 (Erie

Co. 1986).  (*Id.*, pp. 10-11.)  *Aquino*, however, does not explain

how a party who successfully defended an action is entitled to

indemnification when a valid claim for indemnity requires, at

the very least, that the party seeking indemnification was "held

liable to the injured party."  *Trs. Of Columbia Univ. v.*

*Mitchell/Giurgola Assocs.*, 492 N.Y.S.2d 371, 374 (1st Dep't

1985); *Smith v. N.Y. Enter. Of Am., Inc.*, No. 06 Civ.3082 (PKL),

2008 U.S. Dist. LEXIS 55059, at *26 (S.D.N.Y. Jul. 21, 2008) (a party is not entitled to indemnification if it is found "free from liability").  If, as the UH Defendants assert in their hypothetical, the UH Defendants successfully defend and are therefore found not liable for plaintiffs' claims, then the UH Defendants have no right to indemnification from the Appraisers or from any other party.  This finding is consistent with the "general rule" under New York law, set forth by the Court of Appeals, that "attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule." *Hooper Assocs., Ltd. v. AGS Computers, Inc.,* 549 N.Y.S.2d 365, 491 (1989) (citations omitted); *Baker v. Health Mgmt. Sys., Inc.*, 745 N.Y.S.2d 741, 742 (2002)(same).  Thus, in the absence of any direct relationship between the UH Defendants and the Appraisers or any obligation created by law, the court holds that the UH Defendants' claims for indemnity from the Appraisers must fail as a matter of law.

U.S. Bank's argument for a claim of indemnity against the Appraisers, on the other hand, is primarily based on U.S. Bank's contention that it has an "implied contractual relationship" with the Appraisers as a result of U.S. Bank's purchase of the plaintiffs' mortgages from Alliance, the original lender -- extrapolating that the duty of care owed to

Alliance from the Appraisers extends to U.S. Bank. (U.S. Bank Opp., pp. 8-9.) New York courts, however, have implied a right to indemnification only where the proposed indemnitor has a direct relationship with the proposed indemnitee. *McDermott*, 428 N.Y.S.2d at 647 (the manufacturer of a defective product has a duty to indemnify the direct purchaser of the defective product for injuries caused to a third party); *McFall v. Compagnie Maritime Belge (Lloyd Royal) S.A.*, 304 N.Y. 314 (1952) (where contractor entered into an agreement with the shipowner to perform loading operations, shipowner could seek indemnification from contractor for injuries to plaintiff resulting from contractor's negligence); *Tipaldi v. Riverside Mem'l Chapel, Inc.*, 78 N.Y.S.2d 12, 16-17 (1st Dep't 1948) (owner of property had a right to indemnification from its general contractor with whom it had entered into an express contract for service); *Rogers v. Dorchester Assocs.*, 347 N.Y.S.2d 22, 30 (1973) (where an elevator maintenance company entered into a maintenance contract with the owner and manager of an apartment building, the company had a duty to indemnify the owner and manager for elevator-related injuries sustained by a tenant of the building).

Here, there is no direct relationship between U.S. Bank and the Appraisers to create either an express or implied duty on the part of the Appraisers to indemnify U.S. Bank.

Moreover, indemnification of U.S. Bank by the Appraisers would not advance social policy as U.S. Bank, and not the individual Appraisers, is in the better position to "spread the risk of the loss to society as a whole." *Welton Becket Assocs.*, 478 N.Y.S.2d at 314. Furthermore, in light of U.S. Bank's contractual right to indemnity from Alliance as expressly set forth in the mortgage purchase agreement,[21] Alliance is the proper party against whom U.S. Bank should seek indemnification, assuming U.S. can prove its right to indemnity under the facts alleged.

In the alternative, U.S. Bank also argues that implied indemnification is available when "there is a great disparity between the fault of the two defendants and the defendant with little or no liability pays for the fault of the other defendant," suggesting that implied indemnification is available even when there is no implied agreement to indemnify between the parties. (U.S. Bank Opp., p. 6.) Although U.S. Bank cites to *People's Democratic Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346, 351 (2d Cir. 1986) in support of this proposition, *Goodpasture* recognized the established principle that the proposed indemnitor's duty to indemnify arises out of its contractual duties to the proposed indemnitee. *Id.*

---

[21] U.S. Bank references the purchase agreement in its cross-claim against Alliance. The court considers the purchase agreement as incorporated into U.S. Bank's pleadings by reference. *See Roth*, 489 F.3d at 509.

("Goodpasture's duties to Yemen arose out of their contracts, none of which required Goodpasture to indemnify Yemen for deadfreight charges."); *see also Conrad*, 891 F. Supp. at 966 ("Although *Mas* [*v. Two Bridges Assocs.*, 555 N.Y.S.2d 669, 674 (1990)] held that 'commonly the indemnity obligation is implied, . . . based upon the law's notion of what is fair and proper between the parties,' Mas did not abrogate the rule that a claim for indemnification must be premised upon an express or implied duty owed the indemnitee by the indemnitor.") (citations omitted). The court holds, therefore, that no independent duty to indemnify exists between the Appraisers and U.S. Bank, and thus, U.S. Bank's claims for indemnity against the Appraisers fail as a matter of law.

## VI. U.S. Bank's Request For Leave To Amend Its Answer To Include Additional Direct Claims Against The Appraisers Is Denied For Reasons Of Undue Delay And Undue Prejudice To The Appraisers.

Finally, the court denies U.S. Bank's request to amend its pleadings to assert direct claims against the Appraisers in the event that the court finds, as it does here, that U.S. Bank has no right of indemnity from the Appraisers. As noted above, a "motion to amend should be denied if there is an 'apparent or declared reason -- such as undue delay, bad faith or dilatory motive . . ., repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

party by virtue of the allowance of the amendment, [or] futility of amendment.'" *Dluhos*, 162 F.3d at 69. Moreover,

> "when the amendment is sought after discovery has been closed," "prejudice may be found." *Lyondell-Citgo Ref., LP v. Petroleos De Venez. S.A.*, 02 Civ. 0795, 2004 U.S. Dist. LEXIS 23506, at *2-4 (S.D.N.Y. 2004) (citing *Berman v. Parco*, 986 F. Supp. 195 (S.D.N.Y. 1997)); *Priestley v. American Airlines, Inc.*, 89 Civ. 8265, 1991 U.S. Dist. LEXIS 4804, at *4 (S.D.N.Y. April 12, 1991) ("Insofar as the proposed claim is not predicated on facts learned after the pleading stage of the litigation, the resulting delay is not excusable."); *see also MacDraw, Inc. v. CIT Group Equip. Fin.*, 157 F.3d 956, 962 (2d Cir. 1998) (affirming the district court's denial of leave to amend where it was requested after the close of discovery, additional discovery would be required, causing undue prejudice to the defendants, and the delay was unexplained); *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) (affirming the district court's denial of leave to amend after the nonmovant had filed for summary judgment, discovery had been completed, and more than 17 months had elapsed following the commencement of the action, and noting that the party seeking leave to amend has the burden of providing a satisfactory explanation for the delay); *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (affirming the district court's denial of leave to amend where the proposed new claims were raised after discovery had been completed and the nonmoving party had filed for summary judgment).

*Ruotolo v. City of New York*, No. 03 Civ. 5045 (SHS), 2006 U.S. Dist. LEXIS 57346, at *6-7 (S.D.N.Y. Aug. 16, 2006); *see Trezzo v. NRG Energy, Inc.,* No. 06 Civ. 11509 (PKC) (DF), 2008 U.S.

Dist. LEXIS 15478 , at *15-16 (S.D.N.Y. Feb. 28, 2008) (finding potential prejudice to defendant and undue delay of the action where discovery in the matter was complete, but for the proposed amendment).

Despite U.S. Bank's assertions to the contrary, with the exception of discovery relating to handwriting exemplars from plaintiff Washington, (*see* Minute Entry, dated December 2, 2008), fact discovery closed in the related actions on October 31, 2008.  (Minute Entry, dated September 29, 2008). Accordingly, as fact discovery has closed and it has been almost four years since the plaintiffs filed their original complaints, U.S. Bank offers no reason for this lengthy delay apart from the fact that it is now concerned that its claims for indemnification against the Appraisers may be insufficient as a matter of law.  *Ruotolo*, 2006 U.S. Dist. LEXIS 57346, at *6 ("A '[c]ourt may deny a motion to amend when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed, particularly when the movant offers no excuse for the delay.'") (quoting *Berman v. Parco*, 986 F. Supp. 195, 217 (S.D.N.Y. 1997)).  This delay is not excusable.  If the court were to permit the amendments that U.S. Bank requests, additional discovery would be needed by the Appraisers to defend against the direct claims U.S. Bank seeks to include against them.  The related actions have been ongoing

for almost four years, and the court has granted numerous extensions of the fact discovery deadline before fact discovery finally closed on October 31, 2008. Thus, for reasons of "undue delay" and "undue prejudice" to the opposing parties, the court denies U.S. Bank's request to add additional causes of action against the Appraisers.

## CONCLUSION

For the reasons set forth herein, the cross-claims for indemnity asserted by the UH Defendants and U.S. Bank against the Appraisers are dismissed. Moreover, if, and only if, the Appraisers execute a settlement agreement and release from liability with the plaintiffs, the cross-claims for contribution asserted against the Appraisers by all of their co-defendants will be dismissed by the court. The Appraisers shall file a stipulation of release from liability after obtaining same from the plaintiffs, upon which filing the court will grant the underlying motions to dismiss the contribution claims of the Appraisers' co-defendants in the related actions. If the Appraisers seek relief from all the remaining cross-claims asserted against them by their remaining co-defendants, the Appraisers shall file individual stipulations in which each of the co-defendants, with the exception of the UH Defendants and U.S. Bank, agree to withdraw each of their cross-claims against

the Appraisers.  Finally, U.S. Bank's motion to amend its answer to include a cross-claim for contribution and/or additional direct claims against the Appraisers is denied.

**SO ORDERED.**

Dated: April 20, 2009
      Brooklyn, New York

                                      _____    /s/_____
                                      KIYO A. MATSUMOTO
                                      United States District Judge
                                      Eastern District of New York