```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------X
SANDRA C. BARKLEY,

                 Plaintiff,

     -against-                           04-cv-875 (KAM) (RLM)

UNITED HOMES, LLC, UNITED PROPERTY GROUP,
LLC, YARON HERSHCO, GALIT NETWORK, LLC,
OLYMPIA MORTGAGE CORP., and BENJAMIN
TURNER,

                 Defendants.
-----------------------------------------X
MARY LODGE,

                 Plaintiff,

     -against-                           05-cv-187 (KAM) (RLM)

UNITED HOMES, LLC, UNITED PROPERTY GROUP,
LLC, YARON HERSHCO, GALIT NETWORK, LLC,
OLYMPIA MORTGAGE CORP., BAYVIEW LOAN
SERVICING, LLC, BAYVIEW ASSET MANAGEMENT,
LLC, U.S. BANK, N.A., AS TRUSTEE FOR
BAYVIEW ASSET-BACKED SECURITIES TRUST
SERIES 2007-30, and BAYVIEW FINANCIAL
MANAGEMENT CORP.,

                 Defendants.
-----------------------------------------X
DEWITT MATHIS,

                 Plaintiff,

     -against-                           05-cv-4386 (KAM) (RLM)

UNITED HOMES, LLC, UNITED PROPERTY GROUP,
LLC, YARON HERSHCO, GALIT NETWORK, LLC,
and ALLIANCE MORTGAGE BANK CORP. BANKING
CORP.,

                 Defendants.
-----------------------------------------X
```

```
------------------------------------------X
```
SYLVIA GIBBONS and SYLVIA GIBBONS, AS
ADMINISTRATOR OF THE ESTATE OF RODNEY
GIBBONS,

             Plaintiffs,

      -against-                    05-cv-5302 (KAM) (RLM)

UNITED HOMES, LLC, UNITED PROPERTY GROUP,
LLC, YARON HERSHCO, GALIT NETWORK, LLC,
and OLYMPIA MORTGAGE CORP.,

             Defendants.
```
------------------------------------------X
```
MILES MCDALE and LISA MCDALE,

             Plaintiffs,

      -against-                    05-cv-5362 (KAM) (RLM)

UNITED HOMES, LLC, UNITED PROPERTY GROUP,
LLC, YARON HERSHCO, GALIT NETWORK, LLC,
ALLIANCE MORTGAGE BANK CORP. BANKING,
CORP., and BENJAMIN TURNER,

             Defendants.
```
------------------------------------------X
```
CHARLENE WASHINGTON,

             Plaintiff,

      -against-                    05-cv-5679 (KAM) (RLM)

UNITED HOMES, LLC, UNITED PROPERTY GROUP,
LLC, YARON HERSHCO, GALIT NETWORK, LLC,
and ALLIANCE MORTGAGE BANK CORP. BANKING
CORP.,

             Defendants.
```
-----------------------------------X
```

## AMENDED MEMORANDUM AND ORDER

**MATSUMOTO, United States District Judge:**

Presently before the court is plaintiffs' proposed calculation of pre-judgment interest on their compensatory damages award, which defendants oppose.  For the reasons set forth below, the court awards pre-judgment interest in the amount of: (1) $61,099.58 for Sandra Barkley; (2) $7,839.91 for Sylvia and Rodney Gibbons; (3) $42,505.32 for Mary Lodge; (4) $81,198.33 for Dewitt Mathis; (5) $95,450.84 for Miles and Lisa McDale; and (6) $18,234.99 for Charlene Washington.  The court also grants post-judgment interest at the statutory rate. 28 U.S.C. § 1961.

## BACKGROUND

Plaintiffs Sandra Barkley, Mary Lodge, Dewitt Mathis, Sylvia Gibbons, Sylvia Gibbons as the Administrator of the Estate of Rodney Gibbons, Lisa McDale, Miles McDale, and Charlene Washington (collectively "plaintiffs") commenced the instant actions against United Homes, LLC; United Property Group, LLC; Galit Network, LLC (the "UH Defendants"); Yaron Hershco ("Hershco"); Olympia Mortgage Corp.[1]; and others, alleging that they engaged in a fraudulent property-flipping scheme wherein the UH Defendants acquired distressed, damaged,

_____

[1] Olympia is named as a defendant in the actions brought by plaintiffs Sandra Barkley, Mary Lodge, and Sylvia Gibbons, and the Estate of Rodney Gibbons.

3

and defective properties in predominantly minority
neighborhoods, made substandard and superficial repairs, and
used racially targeted marketing strategies to sell the
properties as "newly renovated" at substantially inflated
prices, primarily to members of racial and ethnic minorities
with little or no experience with homeownership and minimal
financial acumen.  (*See generally* ECF No. 1[2], Complaint.)
Plaintiffs further alleged that the UH Defendants conspired with
appraisers, attorneys, and mortgage lenders to perpetrate the
fraudulent scheme.  (*Id.*)

On June 1, 2011, following a three-week trial, the
jury found the UH Defendants, Hershco, and Olympia liable for
engaging in deceptive practices in violation of Section 349 of
New York General Business Law, fraud, and conspiracy to commit
fraud, and awarded compensatory and punitive damages.  (ECF
Minute Entry dated 6/1/2011; ECF No. 566, Jury Verdict
("Verdict").)  The jury found the UH Defendants, Hershco, and
Olympia not liable on plaintiffs' discrimination claims.
(Verdict.)

By Memorandum and Order dated January 27, 2012, the
court adjudicated the parties' five post-trial motions.  (*See*
ECF No. 602, Memorandum and Order dated 1/27/2012 ("Mem.").)

---

[2] Unless otherwise indicated, all Electronic Case Filing system ("ECF")
citations are to docket number 04-cv-875.

The court granted in part and denied in part the defendants'
motions for set-offs to account for the settlement amounts paid
by other entities that plaintiffs initially sued.  (*Id.* at 43-
44.)  As a result, plaintiffs' final compensatory damages awards
are as follows:

| Plaintiff | Final Compensatory Damage Award |
|---|---|
| Sandra Barkley | $83,460 |
| Sylvia and Rodney Gibbons | $10,490 |
| Mary Lodge | $58,100 |
| Dewitt Mathis | $106,640 |
| Miles and Lisa McDale | $127,800 |
| Charlene Washington | $24,900 |

The court also granted plaintiffs' motion for pre-
judgment and post-judgment interest on their final compensatory
damages awards because "awarding pre-judgment interest on damages
awarded for fraud is mandatory" under New York Law.  (*Id.* at 44-55
(quoting *In re Crazy Eddie Secs. Litig.*, 948 F. Supp. 1154, 1166
(E.D.N.Y. 1996)).)  The court did not, however, establish an
accrual date from which to calculate the pre-judgment interest.
Section 5001 of the N.Y. C.P.L.R. provides that:

> Interest shall be computed from the earliest
> ascertainable date the cause of action
> existed, except that interest upon damages
> incurred thereafter shall be computed from
> the date incurred. Where such damages were
> incurred at various times, interest shall be
> computed upon each item from the date it was

> incurred or upon all of the damages from a single reasonable intermediate date.

N.Y. C.P.L.R. § 5001(b).  The court agreed with plaintiffs' position that the "earliest ascertainable date the cause of action existed" was the date of the closing on plaintiffs' properties, but recognized that plaintiffs incurred some of the damages--such as the excess interest paid on the predatory mortgages and repair costs--at later dates.  (Mem. at 52.)  Because it was not feasible to compute interest for each item of damages from the date it was incurred, the court determined that pre-judgment interest should be computed from a "single reasonable intermediate [accrual] date" pursuant to N.Y. C.P.L.R. § 5001(b).  (*Id*. at 52-53.)  The court also directed plaintiffs to "submit a calculation of pre-judgment interest for each plaintiff, computed at nine percent per annum and accruing from a reasonable intermediate date, and submit documentation in support of the calculation of such reasonable intermediate date."  (*Id*. at 54.)

## DISCUSSION

In light of the numerous and significant harms each plaintiff sustained as of his or her respective closing date, plaintiffs contend that the appropriate "reasonable intermediate date" is the one-year anniversary of each plaintiff's home purchase.  (ECF No. 604, Submission in Support of Calculations of Pre-Judgment Interest on Damages ("Pls.' Mem.") at 6.)

Plaintiffs assert that the harms they sustained largely stemmed from two root causes, both of which occurred on the date of each plaintiff's home purchase:  (1) the properties were substantially over-appraised, such that the actual value of each property on the date of purchase was significantly lower than the price paid by each plaintiff, and (2) due to shoddy construction, the homes contained serious defects that impaired plaintiffs' quality of life and required substantial repairs. (*Id.* at 3-4.)

Because the properties were substantially over-appraised, plaintiffs paid more in closing costs and mortgage interest than they should have, given the actual value of their respective homes.  (*Id.* at 4.)  Plaintiffs note that the damages they each incurred due to the inflated purchase prices were "front-loaded" because their earliest mortgage payments had the highest interest-to-principal ratio.  (*Id.*)

Plaintiffs also contend that because their homes were poorly constructed, they had to pay excessive heating costs. (*Id.*)  Moreover, because all plaintiffs purchased their homes between the months of September and January, they began to incur the excessive heating costs almost immediately.  (*Id.*)  In support, plaintiffs cite the trial testimony of several plaintiffs, who testified that they had to run their boilers on

7

high or use space heaters or the oven to stay warm in their homes. (*Id.*)

Plaintiffs argue that because nearly all of their injuries were essentially caused by the transaction involving the purchases of their homes, pre-judgment interest should accrue from a date close in time to the date of each plaintiff's purchase, even though the plaintiffs also incurred other, related economic damages later. (*Id.* at 3.) Plaintiffs acknowledge that, due to the one-year warranty from United Homes, plaintiffs were not obligated to pay for the majority of repairs during their first year of home ownership, notwithstanding that the majority of repairs by the United Homes Defendants were ineffective, thus forcing plaintiffs to incur repair costs. (*Id.* at 5.) Consequently, plaintiffs contend that the one-year warranty only delayed or deferred the repair expenses plaintiffs incurred after the warranty period expired. (*Id.*) Accordingly, plaintiffs assert that the "single reasonable intermediate date" from which pre-judgment interest should accrue should be no later than the one-year anniversary of each plaintiff's home purchase, as set forth below:

| Plaintiff | Final Compensatory Damage Award | Closing Date | Proposed Accrual Date for Pre-Judgment Interest |
|---|---|---|---|
| Sandra Barkley | $83,460 | 1/14/2003 | 1/14/2004 |
| Sylvia and Rodney Gibbons | $10,490 | 11/13/2002 | 11/13/2003 |
| Mary Lodge | $58,100 | 1/16/2003 | 1/16/2004 |
| Dewitt Mathis | $106,640 | 9/17/2002 | 9/17/2003 |
| Miles and Lisa McDale | $127,800 | 11/15/2002 | 11/15/2003 |
| Charlene Washington | $24,900 | 1/13/2003 | 1/13/2004 |

In opposition, the UH Defendants and Hershco (hereinafter, "defendants") argue that plaintiffs selected the "earliest possible date a single disbursement occurred," rather than a "reasonable intermediate date" in accordance with the court's order. (ECF No. 606, Defendants' Response to Plaintiffs' Submission in Support of Calculations of Pre-Judgment Interest on Damages ("Defs.' Opp'n") at 2-3.) As a result, defendants contend, plaintiffs' proposed calculation exceeds that which is necessary to make plaintiffs whole and "give[s] [plaintiffs] an economic windfall" and "overcompensate[s] plaintiffs at the price of a penalty to the defendants." (*Id*. at 5.)

Defendants also assert that "plaintiffs have not offered any calculation in accordance with the Court's directive, leaving the Court . . . with no basis to fix a date for awarding interest," and that such failure "does not shift the burden to the defendants to establish an alternate date, nor

does it allow the Court to divine its own date." (*Id.* at 2, 6.) Consequently, defendants argue that the court should use June 1, 2011--the date of the jury's verdict--as the accrual date for any pre-judgment interest.

**I. Plaintiffs' Proposed Single Intermediate Date is Reasonable**

"[W]here damages are incurred at various times after the cause of action accrues, section 5001 grants courts wide discretion in determining a reasonable date from which to award pre-judgment interest." *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994). In the court's view, plaintiffs' proposal to establish the one-year anniversary of each plaintiff's home purchase as the accrual date for pre-judgment interest is reasonable.

Courts frequently use as a "single reasonable intermediate date" the midpoint between the earliest ascertainable date and the last known date on which damages were incurred. *See, e.g.*, *APL Co. Pte. Ltd. v. Blue Water Shipping U.S. Inc.*, 779 F. Supp. 2d 358, 372 (S.D.N.Y. 2011) (using midpoint between two relevant dates to assess pre-judgment interest); *Outram v. Outram*, No. 08-CV-3437, 2010 WL 1222935, at *3 (E.D.N.Y. Mar. 4, 2010), *report and recommendation adopted*, 2010 WL 1222893 (E.D.N.Y. Mar. 23, 2010) (same). Another court in this district has "[a]ppl[ied] § 5001(a) in a more nuanced way . . . [by] adjust[ing] the reasonable intermediate date

10

based on the timing and amount" of damages incurred. *Fed. Nat'l Mortg. Ass'n v. Olympia Mortg. Corp.*, 792 F. Supp. 2d 645, 655-56 (E.D.N.Y. 2011).  When more damages were incurred "earlier in the transfer period, the date to begin interest accrual [would] be earlier than the halfway point," but when more damages were incurred "later in the transfer period, the date to begin interest accrual [would] be later than the halfway point." *Id*. at 656.  The court finds that such an approach is appropriate in the instant case.

Here, the court finds that the reasonable intermediate date should be closer to the date on which plaintiffs began to incur damages because their damages were substantially front-loaded.  At trial, plaintiffs' expert testified that the properties were over-appraised as follows: (1) Dewitt Mathis' home was over-appraised by $133,000 (Tr. VII at 43-44); (2) Miles and Lisa McDale's home was over-appraised by $150,000 (*id.* at 49-50); (3) Charlene Washington's home was over-appraised by $157,000 (*id.* at 51-52); (4) Mary Lodge's home was over-appraised by $185,000 (*id.* at 56-57); (5) Sandra Barkley's home was over-appraised by $124,000 (*id.* at 57-58); and (6) Sylvia and Rodney Gibbons' home was over-appraised by $114,000 (*id.* at 59-60).

Because the properties were thus over-appraised, the down payments due at the time of contracts to purchase were

11

similarly inflated.  Consequently, immediately at the time of
their home purchases, plaintiffs had disbursed funds and were
obligated on mortgages in amounts that were substantially higher
than those that they would have had to pay in the absence of
over-appraisal.  For similar reasons, plaintiffs paid excessive
interest in their monthly mortgage payments.

         Furthermore, very soon after purchasing their homes,
plaintiffs experienced the tangible effects of the defendants'
misrepresentations, which significantly hampered their ability
to enjoy their homes and caused them to incur further expenses.
As discussed in the court's January 27, 2012 Memorandum and
Order, the plaintiffs' properties were fraught with
habitability-impairing conditions, such as inadequate heat,
vermin infestations, leaks, unstable floors and stairways, and
flooding and raw sewage in the basement due to clogged pipes.
(Mem. at 21-23.)  Plaintiffs incurred a variety of significant
and immediate expenses due to these defects, such as excessive
heating costs as a result of running the boiler on high and
using space heaters and ovens to provide adequate heat; the cost
of replacing important papers, clothing, or personal belongings
lost or damaged due to the flooding and sewage problems; and the
expenses associated with exterminating or otherwise coping with
vermin.  (Tr. II at 20-21; Tr. III at 58-65; Tr. IX at 187-190.)

Moreover, plaintiffs spent significant sums conducting their own repairs after the United Homes warranty period expired due to the UH Defendants' failure to cure the defects effectively.  Therefore, because all of the harms plaintiffs sustained stemmed from their home purchases, and plaintiffs' damages were significantly front-loaded, the court finds that the one-year anniversary of each home purchase is a reasonable "intermediate date" from which to calculate the accrual of pre-judgment interest.

The court finds wholly unpersuasive defendants' opposing arguments.  First, contrary to several of defendants' assertions, plaintiffs *have* proposed an "intermediate" date--a date that lies between plaintiffs' earliest cause of action and the last known date on which they incurred expenses due to actions for which the jury found defendants liable.  As the court recognized in its January 27, 2012 Memorandum and Order, the earliest date on which plaintiffs incurred damages is the date of their respective home purchases.  (Mem. at 52.)  On that date, each plaintiff paid a larger down payment than was warranted and took title to a home that was replete with significant hidden defects.  During the year that followed, plaintiffs made monthly mortgage payments that included excessive interest and disbursed funds to ameliorate unsafe, unsanitary, or unlivable conditions in their homes as they

13

waited--often in vain--for the UH Defendants to repair their properties.  Consequently, the court finds unpersuasive the defendants' contention that the proposed accrual date is the "earliest possible date a single disbursement occurred." (Defs.' Opp'n at 3.)

For the same reasons, the court disagrees with defendants' contention that the proposed accrual date would result in a "windfall" for plaintiffs.  Because the proposed "intermediate date" is one year after the date of each plaintiff's home purchase, interest will not accrue on any of numerous and sizeable disbursements plaintiffs made during their first twelve months of ownership, including excess payments toward the down payment or monthly interest, or incidental costs incurred due to property defects.  Consequently, the court finds no merit in defendants' assertion that the proposed scheme would "overcompensate plaintiffs at the price of a penalty to defendants" (Defs.' Opp'n at 5).

Accordingly, the court adopts plaintiffs' proposed "intermediate date" of one year after each plaintiff's closing as the date of accrual of pre-judgment interest.  The court calculates the pre-judgment interest due as follows:

| Plaintiff | Final Compensatory Damage Award | Accrual Date for Pre-Judgment Interest | Amount of Interest (as of 3/1/2012) |
|---|---|---|---|
| Sandra Barkley | $83,460 | 1/14/2004 | $61,099.58 |
| Sylvia and Rodney Gibbons | $10,490 | 11/13/2003 | $7,839.91 |
| Mary Lodge | $58,100 | 1/16/2004 | $42,505.32 |
| Dewitt Mathis | $106,640 | 9/17/2003 | $81,198.33 |
| Miles and Lisa McDale | $127,800 | 11/15/2003 | $95,450.84 |
| Charlene Washington | $24,900 | 1/13/2004 | $18,234.99 |

In addition, pursuant to 28 U.S.C. § 1961, the court grants post-judgment interest at the rate prescribed by law from the date judgment is entered.

## CONCLUSION

For the foregoing reasons, the court awards pre-judgment interest in the amount of: (1) $61,099.58 for Sandra Barkley; (2) $7,839.91 for Sylvia and Rodney Gibbons; (3) $42,505.32 for Mary Lodge; (4) $81,198.33 for Dewitt Mathis; (5) $95,450.84 for Miles and Lisa McDale; and (6) $18,234.99 for Charlene Washington.  The court also grants post-judgment interest at the statutory rate.

The Clerk is respectfully directed to enter judgment in the respective actions as set forth below and to close each case after judgment is entered:

**I.  Damages**

**For Sandra Barkley (04-cv-875):**

(a) $83,460 in compensatory damages jointly and severally from Hershco, United Homes, LLC, United Property Group, LLC, Galit Network, LLC, Olympia, and Ben Turner;

(b) $61,099.58 in pre-judgment interest;

(c) for unfair and deceptive practices, punitive damages in the amount of:

      (1) $1,000 from Hershco,

      (2) $1,000 from United Homes, LLC,

      (3) $1,000 from United Property Group, LLC,

      (4) $1,000 from Galit Network, LLC,

      (5) $1,000 from Olympia, and

      (6) $1,000 from Ben Turner;

(d) for fraud, punitive damages in the amount of:

      (1) $25,000 from Hershco,

      (2) $5,000 from United Homes, LLC,

      (3) $5,000 from United Property Group, LLC,

      (4) $5,000 from Galit Network, LLC,

      (5) $10,000 from Olympia, and

      (6) $10,000 from Ben Turner; and

(e) post-judgment interest at the statutory rate.

**For Sandra Rodney and Sylvia Gibbons (05-cv-5302):**

       (a) $10,490 in compensatory damages jointly and severally from Hershco, United Homes, LLC, United Property Group, LLC, Galit Network, LLC, and Olympia;

       (b) $7,839.91 in pre-judgment interest;

       (c) for unfair and deceptive practices, punitive damages in the amount of:

           (1) $1,000 from Hershco,

           (2) $1,000 from United Homes, LLC,

           (3) $1,000 from United Property Group, LLC,

           (4) $1,000 from Galit Network, LLC, and

           (5) $1,000 from Olympia;

       (d) for fraud, punitive damages in the amount of:

           (1) $35,000 from Hershco,

           (2) $5,000 from United Homes, LLC,

           (3) $5,000 from United Property Group, LLC,

           (4) $5,000 from Galit Network, LLC, and

           (5) $10,000 from Olympia; and

       (e) post-judgment interest at the statutory rate.

**For Mary Lodge (05-cv-187):**

       (a) $58,100 in compensatory damages jointly and severally from Hershco, United Homes, LLC, United Property Group, LLC, Galit Network, LLC, and Olympia;

       (b) $42,505.32 in pre-judgment interest;

(c) for unfair and deceptive practices, punitive damages in the amount of:

      (1) $1,000 from Hershco,

      (2) $1,000 from United Homes, LLC,

      (3) $1,000 from United Property Group, LLC,

      (4) $1,000 from Galit Network, LLC, and

      (5) $1,000 from Olympia;

(d) for fraud, punitive damages in the amount of:

      (1) $35,000 from Hershco,

      (2) $5,000 from United Homes, LLC,

      (3) $5,000 from United Property Group, LLC,

      (4) $5,000 from Galit Network, LLC, and

      (5) $10,000 from Olympia; and

(e) post-judgment interest at the statutory rate.

**For Dewitt Mathis (05-cv-4386)**:

(a) $106,640 in compensatory damages jointly and severally from Hershco, United Homes, LLC, United Property Group, LLC, Galit Network, LLC, and Alliance Mortgage Bank Corp.;

(b) $81,198.33 in pre-judgment interest;

(c) for unfair and deceptive practices, punitive damages in the amount of:

      (1) $1,000 from Hershco,

      (2) $1,000 from United Homes, LLC,

18

(3) $1,000 from United Property Group, LLC,

(4) $1,000 from Galit Network, LLC, and

(5) $1,000 from Alliance Mortgage Bank Corp.;

(d) for fraud, punitive damages in the amount of:

(1) $35,000 from Hershco,

(2) $5,000 from United Homes, LLC,

(3) $5,000 from United Property Group, LLC,

(4) $5,000 from Galit Network, LLC, and

(5) $10,000 from Alliance Mortgage Bank Corp.;

and

(e) post-judgment interest at the statutory rate.

**For Miles and Lisa McDale (05-cv-5362):**

(a) $127,800 in compensatory damages jointly and severally from Hershco, United Homes, LLC, United Property Group, LLC, Galit Network, LLC, Alliance Mortgage Bank Corp., and Ben Turner;

(b) $95,450.84 in pre-judgment interest;

(c) for unfair and deceptive practices, punitive damages in the amount of:

(1) $1,000 from Hershco,

(2) $1,000 from United Homes, LLC,

(3) $1,000 from United Property Group, LLC,

(4) $1,000 from Galit Network, LLC,

(5) $1,000 from Alliance Mortgage Bank Corp., and

19

(6) $1,000 from Ben Turner;

(d) for fraud, punitive damages in the amount of:

(1) $25,000 from Hershco,

(2) $5,000 from United Homes, LLC,

(3) $5,000 from United Property Group, LLC,

(4) $5,000 from Galit Network, LLC,

(5) $10,000 from Alliance Mortgage Bank Corp.,
and

(6) $10,000 from Ben Turner; and

(e) post-judgment interest at the statutory rate.

**For Charlene Washington (05-cv-5679):**

(a) $24,900 in compensatory damages jointly and severally from Hershco, United Homes, LLC, United Property Group, LLC, Galit Network, LLC, and Alliance Mortgage Bank Corp.;

(b) $18,234.99 in pre-judgment interest;

(c) for unfair and deceptive practices, punitive damages in the amount of:

(1) $1,000 from Hershco,

(2) $1,000 from United Homes, LLC,

(3) $1,000 from United Property Group, LLC,

(4) $1,000 from Galit Network, LLC, and

(5) $1,000 from Alliance Mortgage Bank Corp.; and

(d) for fraud, punitive damages in the amount of:

20

    (1) $35,000 from Hershco,

    (2) $5,000 from United Homes, LLC,

    (3) $5,000 from United Property Group, LLC,

    (4) $5,000 from Galit Network, LLC, and

    (5) $10,000 from Alliance Mortgage Bank Corp.;

and

  (e) post-judgment interest at the statutory rate.

  /

  /

  /

  /

  /

  /

  /

  /

  /

  /

  /

  /

  /

  /

  /

  /

## II.  Injunctive Relief

In addition, in each of the above-referenced actions, the court permanently enjoins United Homes, LLC, United Property Group, LLC, Galit Network, LLC, and Hershco from: (a) engaging in fraudulent property-flipping activities; (b) misrepresenting the condition of any homes they seek to sell; (c) misrepresenting the extent or quality of repairs or renovations performed on a home prior to selling it to a potential buyer; (d) misrepresenting the value of a residential property; and (e) misrepresenting the affordability of financing available to potential homeowners.  The court also directs United Homes, LLC, United Property Group, LLC, Galit Network, LLC, and Hershco to advise potential homeowners to seek independent appraisers, mortgage lenders, inspectors, contractors and attorneys.

**SO ORDERED.**

Dated:    March 1, 2012
          Brooklyn, New York

                                    /s/
                        **KIYO A. MATSUMOTO**
                        United States District Court
                        Eastern District of New York